FRANK R. CHANDLER

*v.*

CLARA E. WARD.

*Opinion filed December 20, 1900.*

1. PARTIES—*who should be made parties to chancery proceeding.* A complainant in chancery should bring before the court, either as co-complainants or defendants, all persons so circumstanced that, unless their rights are bound by the decree, they may cause future molestation to the party against whom the relief is sought.

2. SAME—*when husband is necessary party to a proceeding by wife to cancel notes.* The husband of the complainant in a bill filed by her to cancel certain notes and trust deeds is a necessary party to the proceeding, where he executed the notes and trust deeds with his wife and was legally liable thereon, and the decree provides that if the notes and trust deeds are not surrendered up and canceled then the defendant shall pay to complainant the amount remaining unpaid upon the loans secured thereby.

3. SAME—*legal holders of notes are necessary parties to bill for cancellation.* In a proceeding to cancel notes and trust deeds delivered to the defendant, if the evidence shows that third persons have purchased the notes from the defendant such persons are necessary parties.

4. SAME—*what does not make holders of notes parties to suit.* That the original bill for the cancellation of notes upon its face makes "the unknown owners and holders of such notes" defendants thereto does not make them parties to the proceeding, where no steps were taken to bring them into court, by publication of notice or otherwise.

5. APPEALS AND ERRORS—*want of necessary party cannot be cured in the Appellate Court.* The Appellate Court cannot take original jurisdiction of the person of one who was not a party to the record below by allowing him to file a stipulation, in which he agrees to be bound by the decree below and by any judgment to be rendered in the decree.

6. SAME—*error in not awarding interest cannot be cured by stipulation on appeal.* A cause pending before an appellate tribunal must be decided upon the record as brought up, and hence the Appellate Court cannot cure an error of the trial court in not awarding interest by requiring the filing of a stipulation, in which the party bound by such provision of the decree agrees to pay interest.

*Chandler v. Ward,* 83 Ill. App. 315, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

This is a bill, filed on May 7, 1896, by the appellee, Clara E. Ward, against the appellant, Frank R. Chandler, and one Peyton R. Chandler, deceased, composing the firm of Chandler & Co., doing a business of money lending in Chicago. The bill alleges that, on October 1, 1895, the appellee owned three parcels of land in Chicago; that on November 25, 1895, she owned six other parcels of land in Chicago; that the same were unimproved; that she was desirous of erecting buildings thereon; that on the first date named she entered into three, and, on the second date named, into six more agreements with said firm of Chandler & Co. for nine separate loans upon said parcels of land to be evidenced and secured by separate sets of notes and trust deeds, executed by her and Alfred L. Ward, her husband; that seven of said nine agreements for loans were for the sum of $2500.00 each and two for $2200.00 each; that in pursuance of said agreement, several sets of notes, with semi-annual interest coupons attached thereto, were executed by herself and her husband to the order of themselves, and were by them endorsed and delivered to said firm of Chandler & Co.; that trust deeds to secure said notes were executed by them upon said premises to Frank R. Chandler, as trustee, which trust deeds were also delivered to said trustee; that appellee was to erect buildings on said premises; that, after the delivery of the securities, appellee proceeded with the erection of a building on each of the nine parcels of land, and completed the same about April 15, 1896; that upon each of said loans Chandler & Co. charged a commission of six per cent upon the first three thereof, and five per cent on the last six thereof; that such commissions were high, exorbitant

and usurious; that in January, 1896, appellee called upon
Chandler & Co. for a statement of the nine loan trans-
actions and the amount due her under each respectively;
that they furnished the same in two statements, showing
the balance due her as per statements to be $19,633.19;
that the nine loans were evidenced by separate trust
deeds and notes for separate amounts, and were separate
transactions; that all of said notes were drawn to the
order of Alfred L. Ward and the appellee, and by them
endorsed, and became negotiable by delivery; that, in
April, 1896, appellee applied for and demanded the money
due her upon said transactions and each of them, and
Chandler & Co. refused to pay the money due her on
said notes and trust deeds; that appellee offered to re-
lease Chandler & Co. from their several undertakings
to pay her the money called for by said notes and trust
deeds, and proposed to pay them their commissions and
expenses, if they would surrender her said notes and
discharge said several trust deeds of record, but they
refused to do so; that Chandler & Co. stated, that the se-
curity given by appellee to them for certain other loans,
which had been settled and accounted for between her
and them, had become depreciated, and was not sufficient
security, and claimed the right to hold said nine trust
deeds, and the notes secured thereby, and the money due
thereupon, as additional or collateral security to the said
settled loans; that said previous loans are not germane
to this litigation, and that her equities in the real estate
covered thereby have been sold; that the transactions
concerning said nine loans were conducted by appellee's
husband, as her agent, for that purpose; that, in agree-
ing upon the kind of buildings to be erected upon said
nine lots, Peyton R. Chandler referred to certain other
buildings theretofore erected by appellee, and stated
that the same were satisfactory with certain exceptions
as to size, which requirements were consented to by the
appellee and complied with by her; that said buildings

were erected in accordance with said understanding, that the same should be erected of the exact size, kind, finish and materials as the buildings theretofore erected; that, when appellee's agent called on Chandler to make the papers to secure said loans, Peyton R. Chandler told her that he intended to sell said papers, trust deeds and notes to his customers and friends in the east, and would require appellee's agent to make a written application therefor; that said agent thereupon gave him estimates of the values of said grounds and buildings; that said Chandler increased the amount of said estimates for the purpose of aiding him in selling said securities to his customers in the east; that appellee has been informed that her husband, in signing said applications, gave some estimates in excess of those authorized by her, and, in doing so, exceeded his authority; that Chandler & Co. were the judges of said lands and buildings, and made the estimates themselves.

The bill charges, that said trust deeds are clouds upon appellee's title, and impair the value thereof, and ought to be set aside, canceled and delivered up to her; that she owns said nine tracts of land and is in possession thereof; that Chandler & Co. have her title deeds and abstracts and refuse to surrender the same; that said trust deeds are liens, and said principal and interest notes are outstanding obligations against appellee, either in the possession of Chandler & Co., or sold by them, and the proceeds converted by them.

The prayer of the bill is for a full accounting as to said nine loans, and as to the money withheld by the defendants, and as to the exorbitant commissions; and the further prayer of the bill is, that said commissions may be declared to be an improper charge; that said trust deeds may be decreed to be clouds upon the title, and be set aside and delivered up; that said notes be surrendered and canceled; that defendants be compelled to deliver up to appellee her title deeds and abstracts; that,

should the court find that Chandler & Co. have sold said notes and trust deeds, or a part of the same, and that it is more in accordance with equity to allow the trust deeds to remain a lien upon the parcels of land, and the notes to remain obligatory upon appellee, then that Chandler & Co. be decreed to carry out the loans, and pay the complainant the several sums found due upon the accounting, and all damages suffered by her. The bill also prays for a receiver of said title deeds and abstracts, notes and trust deeds, and for such other and further relief as equity may require.

Peyton R. Chandler and Frank R. Chandler, individually, and on behalf of the legal holders of said notes, appeared and answered the bill. They admit in their answer the negotiation of the loans and the execution and delivery of the notes and trust deeds, and that, as a condition to the making of said loans, certain buildings were to be erected as part security therefor; they deny the agreement that the buildings were to be of the size, kind, finish and materials thereafter erected on the land; admit that certain other buildings, theretofore erected by appellee and her husband, were referred to, but state that the same had never been inspected, but defendants relied upon the statements of appellee and her husband in regard thereto, and believed they had been erected according to applications in former loans; state that, in the three loans of October 1, 1895, it was agreed that appellee should erect a two-story dwelling house upon each of said lots of agreed dimensions, hard-wood finish, and to cost $3500.00 each, as is stated in the written application; and that the last six of said loans were made upon condition that buildings were to be erected upon each parcel to cost not less than $3700.00 each, to be of certain dimensions, of hard-wood finish, Bedford stone fronts, and according to the city ordinances, as stated in the written applications. The answer alleges that said agreements have not been complied with; that the buildings,

as erected, are not of the dimensions, and according to the other specifications, or of the cost or value mentioned in the application, and that the same are in an incomplete condition; that the buildings, which were to cost $3500.00 each, did not cost over $1000.00 each, and those, that were to cost $3700.00 each, did not cost over $1100.00 each; the answer avers that the commissions were the usual rates charged for loans in that locality.

The answer further avers that, before making said loans, appellee negotiated twenty-one other loans upon twenty-one separate lots; two for $2200.00 each, and one for $2500.00, on April 12, 1895, in each of which appellee and her husband agreed to erect a building on each lot to cost not less than $3500.00; four for $2200.00 each, and two for $2500.00 each, dated July 1, 1895, in each one of which they agreed to erect a building on each lot to cost not less than $3800.00; ten for $2000.00 each, August 1, 1895, agreeing to erect a building on each lot to cost not less than $3000.00; and two August 20, 1895, for $2200.00 each, in which the buildings were to cost not less than $3000.00 each; that defendants had known appellee and her husband for a number of years, and believed them to be honest; that from previous dealings they had come to regard Alfred L. Ward as a competent builder, and relied upon his representations; that they made payments of money to him without architect's certificates; that appellee and her husband drew money from defendants, directly and by checks, without designating what loans the sums should be charged against; that the same have been charged against any of said loans; that the said transactions constituted one running transaction and account and should not be separated. The answer admits the furnishing of the statements set up in the bill, but alleges that the same were furnished upon the report of Alfred L. Ward, that the buildings erected in pursuance of the twenty-one other loans, all forming a part of such running transaction, had been fully completed accord-

ing to contract, and that the buildings on the nine loans mentioned in the bill were being erected according to the applications and agreements therefor; that all said representations were false and untrue, and were relied upon by the defendants; that in fact no sum whatever is due to the appellee; that defendants requested a statement from appellee and her husband as to the cost of said buildings, but they refused to furnish said statement, insisting that the defendants were not entitled to know what the buildings cost; that thereupon defendants inspected the same, and found them in an incomplete condition, and inferior in cost, workmanship and style of finish to those called for by the specifications and agreements; that the same did not cost more than the sums before stated; that, upon ascertaining the gross fraud attempted to be perpetrated upon them by appellee and her husband, defendants refused to make further payments; that the advances were so made upon the fraudulent representations of appellee and her husband, that the buildings had been built according to contract; that, in the three loans of $2500.00 each and six for $2200.00 each, in which the buildings were to cost not less than $3800.00 each, and in the two in which they were to cost not less than $3000.00 each, the same did not cost to exceed $1000.00, and in the ten loans of $2000.00 each, in which buildings to be erected were in each case to cost not less than $3000.00 each, the same did not cost or exceed in value the sum of $900.00 each. The answer admits, that Peyton R. Chandler may have stated that he intended to sell said loans to his customers in the east, and that he would require written applications therefor, but denies that appellee or her husband made estimates other than those contained in the applications; that the amounts written therein were agreed upon, and were part consideration for making the loans. The answer denies, that appellee is entitled to apply the net amounts, that may be found in an accounting to have been paid, upon

the premises described in her bill, but that all payments should be credited upon the general account of the parties. The answer, denies, that defendants have no legal interest in said loans, and will in no way be pecuniarily liable whether the same are paid or not, but states that defendants sold said loans in good faith to their customers upon representations by them as to the cost and value of the buildings, as called for by appellee's applications, copies of which were furnished to the purchasers; that defendants are morally and legally bound to said purchasers for any loss by reason of default in appellee's agreements in the erection of the buildings; that they have no right or authority from their customers to pay appellee the amount of said loans until full performance of her agreements; that they hold said amount as the agents of the purchasers of all said thirty loans, and for their protection, until the agreements have been performed. The answer states, that defendants are willing to come to a full accounting, but the same should be had in regard to all of the loans; that appellee has grossly defrauded defendants, and the owners of the notes secured by the encumbrances. The answer denies that appellee is entitled to any relief until full performance of her agreements, and that she and her husband should be ordered to carry out the same.

On July 7, 1896, Peyton R. Chandler and Frank R. Chandler filed a cross-bill in the cause, reciting the allegations of the original bill, and setting up the facts with regard to the negotiations of the twenty-one loans prior to making of the nine loans mentioned in the bill, and in regard to the agreements for the erection of buildings and the cost thereof. The cross-bill charges, that appellee and her husband practiced a system of fraud and deception in regard to the construction of said houses; that cross-complainants, have by reason of said fraud, paid at least $10,000.00 more than could be safely loaned upon said premises; that it is customary among real

estate brokers to make no loan exceeding one-half of the value of the property loaned upon; that, if said Ward had carried out said agreements, the property in each case would have equaled in value twice the amount of the loan, and would have been ample security therefor; that it was upon the faith of the statements in the applications, copies of which were furnished to cross-complainants' customers, that the same were purchased by them; that cross-complainants have offered to scale down said loans, but that said offer has been refused. The cross-bill prays, that an account may be taken as to the cost and value of the buildings, and that defendants be decreed to fulfill their agreements; that, in case performance is impracticable, all of said loans be equitably scaled down, so that the amounts outstanding as loans against said premises shall bear the same ratio to the cost of land and buildings, as the amounts originally loaned thereon bear to the value of land and buildings contained in the written applications; that, if cross-complainants have advanced more than they were equitably required to do at such ratio, then that a decree be entered for such excess and execution issue therefor; that, in case it shall be found that the defendants have parted with the title to any of said premises, they be decreed to purchase all that part of the encumbrances over and above the amounts to which the same shall be so scaled down, cross-complainants offering to procure assignments of said encumbrances *pro tanto* upon payment thereof under the decree.

After the coming in of the master's report, cross-complainants filed a written motion for leave to amend their cross-bill by inserting therein an allegation that, by the terms of the purchase of the notes, secured by said thirty trust deeds, by the parties to whom the same were sold by Chandler & Co., said firm were constituted the active trustees of said noteholders, charged with the duty of seeing that the moneys placed in their hands

upon the purchase of said notes should be incorporated into, and used in the erection of the buildings on the premises covered by said trust deeds; that the relief prayed for is sought by said firm individually, and as such active trustees. This motion to amend was denied by the court before the entry of the decree. Appellee and her husband answered the cross-bill, admitting the prior transactions, and that the loans between the parties were building loans; the answer admits the negotiation of the twenty-one loans, mentioned in the cross-bill, prior to the nine loans mentioned in the original bill, but denies that it was agreed the buildings should be erected to cost the amounts therein stated; the answer alleges that, if such valuations appeared in the applications for the loans, they were placed there by direction of Peyton R. Chandler, and were not the acts of appellee; that, if the valuations alleged in the cross-bill as to the cost of buildings, are contained in the applications for the nine loans, the same were also inserted by P. R. Chandler. The answer denies generally the allegations of the cross-bill as to the manner in which the buildings were to be constructed, and denies all fraud and deception. The answer states that appellee and her husband desire an accounting so far as it relates to the nine loans, but deny the right of cross-complainants to an accounting concerning said previous twenty-one loans.

Replications were filed to the answers, and the case was referred to a master in chancery. While proofs were being taken before the master in chancery, Peyton R. Chandler died. The master reported, that the holders of the notes were necessary parties to the bill, that they were not sufficiently represented by Chandler & Co., and for that reason the bill of complaint should be dismissed; that appellee was not entitled to specific performance, but that, in case the holders of the notes should be properly brought into court, appellee would be entitled to a rescission of the nine loan agreements mentioned in her

bill on equitable terms. Upon the issues raised by the cross-bill, the master reported that Chandler & Co. had no interest in the subject matter of the loans, and could not represent the noteholders, and that, therefore, the cross-bill should be dismissed.

The decree, rendered on February 10, 1898, sustains the exceptions filed to the master's report by the appellee, and overrules those filed to the master's report by the appellant, saving the exception to the testimony of Alfred L. Ward, given in the lifetime of Peyton R. Chandler, and after his death, which exceptions are sustained as to the testimony of said Ward as to conversations with Peyton R. Chandler. The decree finds that, shortly before October 1, 1895, the Chandlers agreed with complainant that, if she would purchase a certain lot, they would make her a loan to be secured by notes of herself and husband, Alfred L. Ward, and trust deeds upon respective portions of said lot; that she was to erect a house upon each of said parcels, and that afterwards she purchased said lot, and executed and delivered the notes and trust deeds. The court further finds that, prior to November 25, 1895, Chandler & Co. agreed with complainant that, if she would secure title to a certain other lot, they would make her three other loans secured by three trust deeds upon portions of said lot, and she was to erect a house upon each of said respective parts of said lot as alleged; that she purchased and acquired title to said lots and executed and delivered to Chandler & Co. the notes and trust deeds agreed upon. The decree further finds that, shortly before the last date, said firm agreed with her that, if she would procure title to another lot, they would make her three other loans upon the notes of herself and husband secured by trust deeds upon the respective portions of it, and she was to erect houses on each thereof as mentioned in the bill; that she afterwards purchased said lot and executed the notes and trust deeds agreed upon. The decree finds that all of said notes were pay-

able to the order of Clara E. Ward and Alfred L. Ward,
and were by them endorsed and became negotiable by
delivery; that Frank R. Chandler was the trustee named
in said trust deed; that complainant proceeded to erect
a building upon each of said nine parcels of land, and
completed the same by April 15, 1896, and made demand
upon Chandler & Co. for the amount due to her under
each of said loans, but that Chandler & Co. wrongfully
refused to pay the amounts so due, claiming that they
should hold the same to scale down certain other loans
made before any of the loans mentioned in the bill were
negotiated, asserting that the buildings erected by ap-
pellee under such former loans were inferior to those
agreed to be erected, said Chandler & Co. having before
that time sold all said previous loans and securities after
examining said buildings and accepting the same; that,
upon their refusal to pay the money, appellee offered
to rescind said agreements for all said nine loans, offer-
ing to allow the commissions charged, if Chandler & Co.
would surrender the notes and trust deeds, which they
refused to do.

The decree further finds that the nine loans are sepa-
rate and distinct transactions, and that Chandler & Co.
have disposed thereof without contract liability on their
part, and have received the money therefor; that Clara
E. Ward and Chandler & Co. were principals in said nine
transactions, and that Chandler & Co. are not entitled to
commissions charged on said loan.   The decree further
finds, that the material allegations of the bill have been
settled by the evidence, and that appellee is entitled to
relief, and that the cross-bill of the defendants below
should be dismissed for want of equity; that Chandler
& Co. advanced upon said nine loans $1067.81 only, and,
after deducting from the gross amount of said nine loans,
the sum so advanced, there remains the sum of $20,832.19,
being the balance of $19,633.19 shown in the statement
introduced before the master, plus the sum of $1164.00

wrongfully charged as commissions on said nine loans, and the sum of $35.00 included in the item of $50.00 shown in the statement as attorney's fees, but relating to other loans. The decree finds that in case a money decree shall be rendered herein, the said sum of $20,832.19 shall be paid to the appellee with interest at the rate of six per cent per annum from the date of said notes to the date of this decree, and the date of payment; that the nine trust deeds are clouds upon appellee's title; that the said nine transactions should be rescinded, and the papers canceled, and returned to appellee, and the records of said trust deeds should be expunged, or the money due under said transactions should be paid to appellee. The decree thereupon orders and adjudges, that appellant, individually and as surviving member of said firm, procure the possession of the notes involved in said nine loans and said nine trust deeds, and cause the same to be canceled and released by the parties lawfully entitled so to do, and cause said trust deeds to be discharged of record within thirty days from the date of the decree, and restore to appellee said abstracts and title deeds; that, simultaneously with such cancellation and discharge, appellee shall pay to solicitors for appellant said sum of $1067.81·so advanced by Chandler & Co. under said nine loans; that such surrender, cancellation and discharge, together with the payment of costs of this proceeding shall be a full compliance with this decree on the part of appellant; but, in case appellant shall not procure the release, surrender, cancellation and discharge of said securities upon the payment of such advancement as aforesaid within the time fixed by this decree, then this decree shall be absolute for the payment of the money due appellee under said nine loan transactions; and the court orders and adjudges, that Frank R. Chandler, individually and as surviving member of said firm, shall thereupon pay to appellee's solicitors said sum of $20,-832.19 with interest as herein found due the complainant,

and that she have execution. The decree further orders that the cross-bill be dismissed for want of equity, and that appellee recover her costs from appellant.

STILLMAN & MARTYN, for appellant.

ST. JOHN & MERRIAM, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The evidence in this case shows, that the appellant and his former partner, Peyton R. Chandler, now deceased, constituting, in the lifetime of the latter, the firm of Chandler & Co., made nine building loans upon nine different parcels of ground to the appellee. The bill charges, that the houses which were to be erected upon the nine lots, have been erected, and that the appellant, surviving member of the firm of Chandler & Co., declines to pay over a large portion of the money, which was to be paid upon said loans. The bill in the case prays, either that the agreements for the loans upon the lots in question be rescinded, and the trust deeds be canceled as clouds on the title, and the notes secured thereby be delivered up and surrendered, or that the appellant be required to carry out the agreements for the loans, and pay over the portion of the money due thereon, which remains unpaid. The appellant charges in his answer to the bill, that appellee agreed to construct upon the premises in question houses, which should cost certain sums of money; that the houses actually erected are incomplete, and inferior in their construction and materials, and that they actually cost only about one-third of the amounts agreed upon.

The evidence shows, that the notes, which were executed and secured by the trust deeds upon the nine parcels of land, were executed by the appellee, Clara E. Ward, and her husband, Alfred L. Ward, and were made payable to the order of themselves, Alfred L. Ward and Clara E. Ward, and by them endorsed. The evidence also

shows, that the trust deeds, made to secure these notes, were executed by Alfred L. Ward, appellee's husband, as well as by the appellee herself. Alfred L. Ward was made a party defendant to the original bill, but was never served, nor was any summons ever issued against him upon the original bill to bring him into court, nor did he enter his appearance in the original suit, or file any answer to the original bill. He was a necessary party to the bill. The bill prays, that certain notes and trust deeds shall be canceled and set aside, which notes and trust deeds were executed by him as well as by the appellee, his wife. He was personally liable upon the notes. Although the legal title to the property, upon which the loans were made, was in the appellee, Clara E. Ward, yet there are circumstances established by the evidence, tending to show that Alfred L. Ward, her husband, was the real owner of the property. Alfred L. Ward was a practical builder. He made all the contracts for the loans in question, and was a party interested in their proceeds. Appellee had nothing to do with any of the transactions involved in the litigation. Under the circumstances, it is impossible to hold otherwise than that Alfred L. Ward is a necessary party to this suit. If appellee is allowed to proceed without him, appellant may be in danger of future suits at his instance. The decree orders, that appellee pay back the money which appellant has advanced upon the nine loans, and that, simultaneously with such payment, appellant shall surrender and cancel the notes secured by the trust deeds, and procure releases of the trust deeds themselves. If this should be done, Alfred L. Ward, who signed the notes and trust deeds, would be relieved from all further liability. But the decree is in the alternative, and provides that, if the notes and trust deeds are not surrendered and released, then appellant shall pay over the money still remaining unpaid upon the loans. If the latter course should be pursued, then the notes and trust deeds would

be still outstanding, and the notes would be obligations still existing against Alfred L. Ward. He might have the right hereafter to complain that, under this bill to rescind, a rescission was not effected, but that his obligations were allowed to continue. In such event, appellant would be subject to further litigation on the part of the said Alfred L. Ward. "Persons, whose interests will necessarily be affected by any decree that can be rendered, are necessary and indispensable parties." (15 Ency. of Pl. & Pr. p. 612). Necessary and indispensable parties include "all persons, who have an interest in the controversy of such a nature, that a final decree cannot be made without either affecting their interests or leaving the controversy in such a condition, that its final termination may be wholly inconsistent with equity and good conscience." (Ibid. pp. 611, 612). "The term 'necessary parties' also includes persons, who * * * are so connected with the subject matter of the controversy, that it is necessary to have them before the court for the proper protection of those, whom the decree will necessarily and directly affect." (Ibid. p. 614). "If the defendants actually before the court may be subjected to undue inconvenience, or to danger of loss or to future litigation, or to a liability under the decree more extensive or direct than if the absent parties were before the court, that of itself will in many cases furnish a sufficient ground to enforce the rule of making the absent persons parties." (Ibid. p. 614; *Jessup* v. *Illinois Central Railroad Co.* 36 Fed. Rep. 738; Story's Eq. Pl. sec. 138; *Apperson* v. *Burgett,* 33 Ark. 328). It has been said, that the complainant should bring before the court, either as co-complainants with himself, or as defendants, all persons so circumstanced that, unless their rights are bound by the decree of the court, they may cause future molestation or inconvenience to the party, against whom the relief is sought. (1 Daniell's Ch. Pr. 241; *Burnham* v. *Kempton,* 37 N. H. 491).

188—22

The decree, entered by the court below, is manifestly erroneous because of the absence of Alfred L. Ward, the husband of appellee, from the record as a party complainant or a party defendant to the original bill. On May 29, 1899, the Branch Appellate Court entered a judgment in this case affirming the decree of the circuit court, but subsequently on June 13, 1899, set aside said judgment of affirmance, and, thereafter, on June 15, 1899, entered another judgment as follows, to-wit: "It appearing to this court that, since the filing of its opinion herein on the 26th day of May, 1899, the appellee has in apt time caused to be filed in this court, and in this cause, the respective stipulations of her husband, Alfred L. Ward, and of herself, as suggested and required by said opinion, and that said stipulations are each respectively sufficient in form and substance to meet the requirements of said opinion, and for the protection of appellant in this cause; it is, therefore, ordered, adjudged and decreed by the court now here, that the decree of the circuit court for the county of Cook, brought into this court by the appeal of said Frank R. Chandler, appellant, be and the same is hereby in all things affirmed; and it is further ordered that appellee do have and recover from the appellant her costs by her in this behalf expended to be taxed by the clerk of this court, and that she have execution therefor."

The Branch Appellate Court, recognizing the necessity of making Alfred L. Ward a party to the proceeding, thus compelled him to become a party by filing a stipulation in the Appellate Court itself. A cause pending before an appellate tribunal must be decided upon the record as it is brought up to that appellate tribunal from the lower court. We know of no law or practice, which authorizes the curing of a defect arising out of a want of proper parties, by the method pursued by the Branch Appellate Court in this case. The stipulation of Alfred L. Ward referred to in the judgment of the Appellate

Court, as filed in that court, is shown by the record now before us, and, by its terms, Alfred L. Ward agrees to be bound by whatever judgment is entered in the cause, and also agrees to be bound by the terms of the decree entered in the circuit court upon the hearing of this cause therein. We are of the opinion, that the Appellate Court cannot take original jurisdiction of the person of one, who is not a party to the bill in the record below, by a purported stipulation on his part.

The evidence clearly shows, that the notes secured by the trust deeds upon the lots in question were transferred or sold and delivered by Chandler & Co. to third parties. Surely, the holders of these notes are the persons most interested in this litigation, as detailed in the statement which precedes this opinion. None of these noteholders were before the court when the decree below was rendered. It is true, that the original bill upon its face makes "the unknown owners and holders of said notes and trust deeds" defendants thereto. But no steps were taken to bring such unknown holders and owners into court. No affidavit was filed, nor was any publication made as required by the statute. Section 7 of the Chancery 'act provides: "In all suits in chancery, and suits to obtain title to lands, in any of the courts of this State, if there be persons interested in the same, whose names are unknown, it shall be lawful to make such persons parties to such suits or proceedings, by the name and description of unknown owners," etc. The section further provides, that "in all such cases an affidavit shall be filed * * * stating that the names of such persons are unknown; and process shall be issued against all parties, by the name and description" as given therein, and that "notices given by publication, as required in this act, shall be sufficient to authorize the court to hear and determine the suit, as though all parties had been sued by the proper names." (1 Starr & Curt. Ann. Stat. —2d ed.—p. 563). Section 43 of the same act provides

that "all decrees, orders, judgments and proceedings, made or had with respect to unknown persons, shall have the same effect, and be as binding and conclusive upon them, as though such suit or proceeding had been instituted against them by their proper names." (Ibid. p. 590). As the holders of the notes were not parties, either in their individual names, or as unknown owners under the provisions of the statute, the decree of the court below, which adjudicated upon their rights in their absence, is clearly erroneous.

The decree rendered by the court below is erroneous in another respect. It orders, that the sum of "$20,832.19, shall be paid to complainant (the appellee) with interest at the rate of six per cent per annum from the date of said notes to the date of this decree and the date of payment." In thus requiring the payment of six per cent interest upon the amount of the decree to the date of payment, the decree is in direct violation of the statute, which fixes the rate of interest upon judgments and decrees at five per cent. Section 3 of the act in regard to interest provides, that "judgments recovered before any court or magistrate shall draw interest at the rate of five per centum per annum from the date of the same until satisfied." (2 Starr & Curt. Ann. Stat.—2d ed.—p. 2293).

The decree also provides that, in case the appellant causes the notes and trust deeds to be canceled and released, the appellee shall pay to the solicitors of appellant the sum of $1067.81, advanced by Chandler & Co. upon said nine loans, but does not require appellee to pay any interest upon this sum of $1067.81. The decree is erroneous in not requiring the payment of interest by appellee upon this amount. The Branch Appellate Court sought to cure this defect in the decree of the court below by requiring the appellee to file in that court a stipulation, agreeing that, if she should be at the end of the litigation required to pay said sum of $1067.81, she would pay, in addition thereto, interest from the first day of

October, A. D. 1895.  The same remarks apply to the act of the Branch Appellate Court in requiring a stipulation from appellee, as were made in regard to the requirement of such a stipulation from Alfred L. Ward.  The error in the action of the circuit court could not be remedied by requiring the filing of a stipulation in the Appellate Court.

We pass no opinion upon the merits of this case.  The material and essential questions involved ought not to be considered, until all the proper parties interested therein are before the court.

The judgment of the Appellate Court and the decree of the circuit court are reversed and the cause is remanded to the circuit court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*