[Civil No. 1518.   Filed April 18, 1917.]

[164 Pac. 439.]

FRANK L. HOWARD, GEORGE F. PEABODY, W. H.
FOREMAN, ROBERT HUNTER, HENRY L. EADS
and RALPH MURPHY, Appellants, v. FRANK LUKE,
W. A. MOEUR and C. WARREN PETERSON, as Mem-
bers of and Constituting the Board of Supervisors of
Maricopa County, Arizona, Appellees.

1. SCHOOLS AND SCHOOL DISTRICTS—BOND ELECTION—VALIDITY.—While
Civil Code of 1913, paragraphs 2736, 2740, regulating elections for
bond issues, must be substantially followed, mere irregularities in
conducting the election or in the notice, returns or canvass of the
votes will not invalidate an election.

2. SCHOOLS AND SCHOOL DISTRICTS—CONTESTING BOND ELECTION—
NECESSARY PARTIES DEFENDANT—SCHOOL BOND ELECTION.—In an
action contesting the validity of a school bond election held by a
school district, the school district, being the only party vitally in-
terested, is a necessary party to the action.

3. SCHOOLS AND SCHOOL DISTRICTS—BOARD OF SUPERVISORS—DUTIES.—
Under Civil Code of 1913, paragraph 2740, providing that the
county board of supervisors shall issue school bonds, if it appears
that such issue was approved at an election, the supervisors have
only ministerial duties to perform, and are not required to defend
suits testing the legality of school bond elections.

4. PARTIES NECESSARY—HOW DETERMINED.—Ordinarily, parties inter-
ested in the decision of the cause must be before the court on one
side or the other.

   [As to equitable doctrine of virtual representation, see note in
Ann. Cas. 1913C, 654.]

5. PARTIES—DEFECTS—WAIVER.—A defect of parties may be waived by
proceeding to trial without objection unless the omitted party is
indispensable to a conclusive determination of the controversy.

6. SCHOOLS AND SCHOOL DISTRICTS—COLLATERAL ATTACK—SCHOOL BOND
ELECTION.—The validity of a school bond election held by a school
district cannot be collaterally attacked in an action to enjoin the
county board of supervisors from issuing bonds pursuant to such
election.

APPEAL from a judgment of the Superior Court of the
County of Maricopa.  R. C. Stanford, Judge.  Affirmed.

Mr. C. F. Ainsworth and Mr. I. J. Lipsohn, for Appellants.

Mr. Wiley E. Jones, Attorney General, and Mr. Clyde M. Gandy, County Attorney, for Appellees.

ROSS, J.—This action was instituted by the plaintiffs-appellants to contest a school bond election held in school district No. 38, Maricopa county, Arizona, and to restrain the members of the county board of supervisors, who are the defendants-appellees, from issuing and selling the bonds so voted. The plaintiffs' right to prosecute the action is based upon their being property owners, taxpayers, and residents of said school district No. 38. They allege that the defendants, the members of the board of supervisors of Maricopa county, have been furnished by the board of trustees of school district No. 38 a certified copy of all the proceedings had in the matter of said election, wherein it was made to appear that a majority of the votes cast at said election were in favor of issuing such bonds and that said board of supervisors, acting thereon, had determined and ordered that the bonds of said school district in the sum of $15,000 should be issued, and were taking the legal and necessary steps for their sale. Plaintiffs further allege that the certified copy of the proceedings presented to the board of supervisors was not a true and correct statement of all of the proceedings; that the election was irregular and illegal, in that the law in several enumerated respects was not observed. In the view that we take of the case we do not deem it necessary to set forth here the various grounds upon which the election is asked to be declared ineffectual for the purpose for which it was held. The court issued a temporary restraining order, as prayed for, and at the trial heard evidence upon all of the issues tendered by the complaint. At the final hearing the temporary injunction was dissolved and judgment entered in favor of the defendants. The plaintiffs appealed from said judgment.

The power and authority of boards of trustees of school districts to call elections for the purpose of deciding whether bonds in their districts shall be issued and sold for the purpose of raising money for purchasing or leasing school lots or for building schoolhouses, and the notice to be given and the manner of holding such elections, are prescribed in sec-

tions 2736 to 2740, inclusive, of the Civil Code of 1913. That
school district No. 38, in voting bonds to build schoolhouses,
was exercising the authority vested in it, is without question.
It is plainly and explicitly granted this power. It being a
creature of the statute and its powers and functions limited
and prescribed by law, we think it is well settled that in vot-
ing bonds the terms and requirements of the statute must be
substantially followed. That does not mean, however, that
mere irregularities in the conduct of the election or in the
notice or in the returns or canvass of the votes should make
it void. Dillon on Municipal Corporations, volume one, section
374, says:

"It is a canon of election law that an election is not to be
set aside for a mere informality or irregularity which cannot
be said in any manner to have affected the result of the elec-
tion."

To the same effect is section 2202, volume 5, McQuillin on
Municipal Corporations; *Territory* v. *Board of Supervisors*, 2
Ariz. 248, 12 Pac. 730.

But granting that irregularities may have occurred, or that
there was fraud or open and flagrant violations of the law
in the conduct of the election, we are puzzled to know how
these things are germane as between the parties to this suit.
These wrongs, if they exist, were committed by the school
district through the judges of the election, or the trustees in
calling and noticing the election or canvassing the returns of
the election. None of these interested parties is before the
court, either as plaintiff or defendant. School district No.
38 is the only party vitally interested in the issue tendered—
the proposed bonds are its bonds. From the property within
its boundaries the interest and principal of the bonds must
be paid. Acting within the limits of the law, it may assume
such obligations, and if, in an endeavor to purchase lots or
build schoolhouses, it is charged with illegal or fraudulent
conduct, it certainly has the right to be heard in a court of
proper jurisdiction on that question. The statute (section
2719, Civil Code) provides that a regularly organized school
district shall be known by designated number, and in that
name it may sue and be sued and hold and convey property
for the use and benefit of the district. It is a *quasi*-municipal
corporation, organized for the purpose of local self-govern-

ment and home rule in matters pertaining to the training and education of its youth. It certainly would be an anomaly in law if a school bond election held by a school district should be declared null and void in a court proceeding wherein the district was not made a party.

The board of supervisors, under the law, have only a ministerial duty to perform. Paragraph 2740, Civil Code. They are not interested individually, and but indifferently in their official capacity. The law does not place upon them the obligation of investigating an election and determining whether the law has been followed or not. They are required, when "all the proceedings had in the premises" make it appear that a majority of the votes cast at said election were in favor of issuing bonds, to issue the bonds. Neither their interest nor their official duty would compel them to make answer in a proceeding of this kind. They might refuse to defend or, if disposed, confess judgment—this without regard to the legality of the election. They are the agents of the school district in a very limited sense. They may issue the bonds, advertise and sell them, but they are not required to defend suits to test the legality of the election authorizing their issuance. In defending a suit of this kind they are mere volunteers in so far as the interest of the school district is concerned. *Atchison, T. & S. F. Co.* v. *Wilhelm,* 33 Kan. 206, 6 Pac. 273.

It is not always an easy matter to determine who are proper parties, but if a party be indispensable, it would seem a statement of the case would plainly show it. The rule is that:

"The parties interested in the decision of the cause must be before the court on one side or the other." *State ex rel.* v. *Sanderson,* 54 Mo. 203.

A defect of parties, however, may be waived by proceeding to trial without objection, unless the party omitted is indispensable to a final and conclusive determination of the question in controversy. The rule in that regard is well stated in *Conway* v. *Sexton,* 243 Ill. 59, 90 N. E. 203, wherein it is said:

"In discussing the method of raising the question of the lack of parties in chancery proceedings in *Prentice* v. *Kimball,* 19 Ill. 320, 323, this court said: 'It is the usual and better

practice, where the want of proper parties is apparent on the face of the bill, to take advantage of it by demurrer or motion to dismiss, or, if not patent, by plea or answer. Where the parties omitted are mere formal parties and not indispensable to a decision of the case upon its merits, it will be too late to make the objection at the hearing; but where the rights of the parties not before the court are intimately connected with the matter in dispute, so that a final decree cannot be made without materially affecting their interests, . . . the objection may be taken at the hearing, or on appeal, or on error. Courts will, *ex officio,* take notice of such omission and rule accordingly.' The following, among other authorities, sustain the rule laid down in the decision just quoted: *Spear* v. *Campbell,* 4 Scam. (Ill.) 424; *Farmers' Nat. Bank* v. *Sperling,* 113 Ill. 273; *Howell* v. *Foster,* 122 Ill. 276, 13 N. E. 527; *Gerard* v. *Bates,* 124 Ill. 150, 7 Am. St. Rep. 350, 16 N. E. 258; *Johnson* v. *Huber,* 134 Ill. 511, 25 N. E. 790; *Bradley* v. *Gilbert,* 155 Ill. 154, 39 N. E. 593; *Chandler* v. *Ward,* 188 Ill. 322, 58 N. E. 919; *Dubs* v. *Egli,* 167 Ill. 514, 47 N. E. 766; *Abernathie* v. *Rich,* 229 Ill. 412, 82 N. E. 308." *Bittinger* v. *Bell,* 65 Ind. 445; *Bradley* v. *Gilbert,* 155 Ill. 154, 39 N. E. 593, Spelling on Injunctions, § 975.

There is another insuperable difficulty in the plaintiffs' case when they undertake to attack the regularity and legality of the school bond election without making school district No. 38 a party to the suit. If the school election here challenged as illegal is to be set aside, it must be by some direct proceeding. Its legality or regularity cannot be impugned or questioned collaterally. Its record of the election and the proceedings in connection therewith speak verity in all proceedings, except it be one brought directly to determine the question of its validity or correctness. In *Smallwood* v. *Newbern,* 90 N. C. 36, the situation was in many respects analogous to the present one, and the court there said:

"The proper authorities having ascertained that a majority of the qualified voters voted 'for schools,' their finding and decision in that respect, for the purposes of this action, is final and conclusive. Their decision cannot be assailed collaterally. If it could be done in this case, it could be done in another, and in every case, and indefinitely. It would lead to gross absurdity and endless confusion.

"The legislature confided to the mayor and council the important duty of submitting the proposition mentioned to the voters of the city of Newbern, and, when they discharged that duty, their action in that respect was conclusive upon everybody as to the result of the vote, so long as it shall stand unreversed by a proper judgment or decree in an action brought for the purpose. *Simpson* v. *Commissioners,* 84 N. C. 158; *Norment* v. *Charlotte,* 85 N. C. 387; *Cain* v. *Commissioners,* 86 N. C. 8; *Block* v. *Commissioners* [*of Bourbon County*], 99 U. S. 686 [25 L. Ed. 491]."

See, also, *Bynum* v. *Commissioners,* 101 N. C. 412, 8 S. E. 136.

The predecessor of this court, in *Phoenix Water Company* v. *Common Council,* 9 Ariz. 430, 84 Pac. 1095, in an action brought to restrain the city of Phoenix from issuing bonds for the purpose of constructing a system of waterworks in the city of Phoenix, wherein fraud and error in the election voting the bonds was alleged, stated the rule as follows:

"Moreover, the election having been held in compliance with the law, and the return thereof, lawful on its face, showing that those supporting the issue of the bonds had prevailed by the lawful majority, this return cannot collaterally be attacked for errors or frauds alleged to have occurred in the conduct of the election or in the registration preceding it. *Carroll County* v. *Smith,* 111 U. S. 560, 565, 28 L. Ed. 517, 4 Sup. Ct. Rep. 539; *Hamilton* v. *Carroll,* 82 Md. 326, 33 Atl. 648."

Whether the rule announced was applicable to the facts of that case or not, we have no doubt that it is applicable to the facts of this case.

We see no reason why the rule announced in local option cases should not be applied in this case. Joyce on Intoxicating Liquors, section 417, says:

"Where the result has been ascertained and declared by the proper officers or tribunal, it is conclusive until reversed by some superior tribunal and cannot be attacked collaterally."

In *State* v. *Emery,* 98 N. C. 768, 3 S. E. 810, it is said:

"The result of the election, as decided and proclaimed, is conclusive in any collateral proceeding. It is to be taken

*prima facie,* that every necessary requisite has been complied with. All facts necessary to the validity of the election must be ascertained and determined, and, when proclaimed, must be final and conclusive, unless impeached or attacked in some direct proceeding.''

Our school bond election law in all material ways is like that of California. The similarity suggests the probability that ours is a copy of the California law (sections 1880–1884, California Political Code), with such slight changes as to meet the different conditions existing in this state. There, as here, the election is called by the board of trustees of the school district and is held under their general superintendence. The proceedings of the election are certified by the school board to the board of supervisors, and, when it appears therefrom that the requisite number of votes were cast in favor of issuing bonds, it is made the duty of the board of supervisors to issue, advertise and sell the bonds.

We find but one case reported in California where the exact question we have before us was involved. *People ex rel. Hart, Attorney General,* v. *Caruthers School District,* 102 Cal. 184, 36 Pac. 396. The court states the case before it in this language:

''The validity of an election held in Caruthers school district is here assailed, and a determination of the regularity of the proceedings under which such election was held is determinative of the case.''

It will be noted that this action was brought directly against the school district.

We are not unmindful of the fact that in *Hicks* v. *Krigbaum,* 13 Ariz. 237, 108 Pac. 482, the court took jurisdiction of a case and decided it involving the validity of a school bond election in school district No. 2 of Cochise county without the district being made a party to the litigation. No mention of the questions we have discussed is made in that case, and we have no doubt that the attention of the court was not called to them and that they were not considered. We think it would be a dangerous precedent fraught with many evils, seen and unseen, to permit the rights of a school district to be adjudicated and determined without its being a party to the suit and also to allow collateral attacks upon its records and pro-

ceedings in the matter of school bond elections to be made in its absence from the record.

The judgment of the lower court is affirmed.

FRANKLIN, C. J., concurs.

CUNNINGHAM, J.—I do not understand that the purpose of this action is to contest a school bond election held in school district No. 38 of Maricopa county. My understanding of the matter, derived from the pleadings, especially from the relief demanded, is that this is an equitable action by which the plaintiff taxpayer, in behalf of himself and all other taxpayers of the said school district similarly situated, is seeking to restrain, by injunction, the board of supervisors of Maricopa county from issuing and selling said school district bonds in pursuance to a certificate of the board of trustees of said school district purporting to confer the power on such board of supervisors to issue and sell such bonds as provided by paragraph 2740 of the Civil Code of Arizona of 1913.

Said statute provides that: After an election has been duly held in the school district, pursuant to call on due notice, "on the seventh day after said election, . . . the returns having been made to the board of trustees, the board must meet and canvass said returns; if it appear that a majority of the votes cast at said election were in favor of issuing such bonds, then the board shall cause an entry of that fact to be made upon its minutes and shall certify to the board of supervisors of the county all the proceedings had in the premises, and thereupon said board of supervisors shall be and they are hereby authorized and directed to issue the bonds of such district, to the number and amount provided in such proceedings, payable out of the building fund of such district, naming the same, and the money shall be raised by taxation upon the taxable property in said district for the redemption of said bonds and the payment of the interest thereon. . . . "

Paragraph 2741: "The board of supervisors by an order entered upon its minutes, shall prescribe the form of said bonds, and of the interest coupons attached thereto, and must fix the time when the whole or any part of the principal of

said bonds shall be payable, which shall not be more than twenty years from the date thereof.''

The complaint shows that an election was held and the vote canvassed by the trustees at the time and place provided, and that the board of trustees did certify to the board of supervisors of the county that which the statute requires as "all the proceedings had in the premises"; but denies that the requisite proceedings were really, actually and substantially had in the premises, of which certificate is made. Consequently, the board of supervisors are not authorized and directed to issue the bonds of such district, to the number and amount provided in the certificate returned for the reason the certificate is false, and the proceedings had in the premises were not such proceedings as are legally sufficient to confer the authority on the board of supervisors to contract for the school district and thereby fix a burden on the taxpayers of the district.

The election by the qualified voters of the district is not sufficient to create a liability, although all of the voters assent thereto. The liability is created by the board of supervisors on the authority of the school district duly conferred by substantially following the procedure laid down by the statutes for that purpose. The contract by which the obligation of the district arises is made between the district, by the board of supervisors legally authorized thereunto, and the purchaser of the bonds. No agency other than the board of supervisors can be lawfully authorized to issue bonds of a school district. The district may not issue bonds without first invoking such agency. The board of supervisors cannot do so until duly authorized. Its authority is derived from "all the proceedings had in the premises"; that is, the proceedings had by the school district prescribed by law. The certificate of such proceedings had is sufficient upon which the board of supervisors may rely as evidence of the board's power to issue the bonds. The appellant taxpayer attacks this certificate as false, and his complaint is based upon the theory that the statute requires the prescribed things to be actually done to confer the power on the board of supervisors, and that the certificate to the effect that the required proceedings were had is not enough.

A court of equity certainly has the jurisdiction to go behind a false certificate and inquire into the proceedings certified, in order to determine whether the board of supervisors had the power to issue the bonds of the district and thereby fix an obligation on the taxpayers of the district. Of course, the absence of power to act is the most fatal of defects, and, if a court of equity may not inquire into the source of the power of an agency about to act in such public matters, then as a consequence the mere certificate of the board of trustees creates the bond liability without the interposition of the board of supervisors. Clearly this action was commenced to inquire into the power of the board of supervisors to issue the bonds of the school district, and enjoin the board of supervisors from doing an official act without the authority of law. If the act is performed, that is, if the board of supervisors are not restrained but proceed to issue the bonds of the school district, having no power to do so, irreparable injury will result to the taxpayers of the district. Necessarily, an inquiry by a court of equity into the power of the board of supervisors to fix a bonded liability upon the taxpayers of the district includes, as an incident to such inquiry, an investigation into the school district bond election, because, in the absence of such election resulting in favor of the issuance of the bonds, the board of supervisors would have absolutely no power to issue the bonds, notwithstanding the certificate of the board of trustees to the contrary. The jurisdiction of a court of equity is invoked in this action to inquire into the power of the board of supervisors to act in the premises, and such jurisdiction is not ousted because the inquiry invoked requires an investigation into a school district bond election. Such election is in effect the expression by the qualified electors of their individual desire with regard to the matter of assuming the bonded obligation. The inquiry extends only to the question whether a majority of such electors have fairly expressed a desire to assume the liability. This question may be determined in the absence of the school district as an entity, the board of trustees as officers of the school district, and the members of the board of trustees as individuals. The election officers ceased to exist when their duties were performed. Neither the school district, the board of trustees of the district, nor the election board, have any future act in

contemplation; hence a restraining order directed against them would be futile, and therefore unnecessary. Such parties are therefore not necessary parties to this action. They can be neither caused to act, nor restrained from acting. They have already acted, and the time for action by them has expired. When the board of trustees completed a canvass of the votes cast at the election and returned to the board of supervisors a certificate of "all the proceedings had in the premises," the entire matter was thereby placed before the board of supervisors, and under the law no agency had or has any right to do anything with regard to the matter of issuing bonds other than the board of supervisors. As a consequence, a court of equity, on a proper showing of the regularity of the certificate returned and the actual performance of the matters and things certified, will compel the board of supervisors to prepare the bonds, advertise for bids, and issue the bonds if acceptable and accepted bids are received therefor. On the other hand, if the acts leading up to the certificate are not performed in a manner substantially as required by the school district bonding statutes, a court of equity, upon being duly informed, will enjoin the board of supervisors from acting in accordance with a certificate shown to be a false certificate, for the reason the acts and not the certificate confer power requisite to sustain a school district bond issue.

I therefore dissent from the holding of the majority of this court: First, because I am clearly of the opinion this is not in any just sense an action instituted for the purpose of contesting a school district bond election; and, second, because in this injunction action neither the school district as an entity, nor the members of the board of trustees of the district, are necessary parties. In fact, I am of the opinion that to make the school district and trustees, or trustees, parties would be improper, and dismissable on motion.

On the merits, the record discloses substantial evidence in support of the judgment. The evidence as a whole tends to show that all of the proceedings had in the premises substantially conform to the requirements of the statutes in such matters; that the several acts certified to the board of supervisors were actually performed substantially in the manner, at the time, and by the persons, as required by law; and that a majority of the qualified district school electors of the school

district fairly voted in favor of issuing the bonds of the district to the amount certified. Consequently, the board of supervisors is lawfully empowered to issue such district school bonds and bind thereby the taxable property within the district to redeem the same according to the terms and conditions of their sale.

For these reasons and others, I am of the opinion the judgment ought to be affirmed, and foreclose all future questions of the validity of the bonds, thereby administering complete justice in the premises.