J. G. BYNUM et al. v. THE BOARD OF COMMISSIONERS OF
BURKE COUNTY.

*Elections—Injunction — Officers—Cause of Action—Undertaking*
*—Appeal—Interlocutory Orders, &c.*

1. Where power is conferred to open, conduct and declare the result of
   an election, the action of those charged therewith in that respect
   is final and conclusive until it is reversed by some proper action
   brought to impeach it; and the Courts will not interfere by injunc-
   tion to prevent them from ascertaining and promulgating the
   result.
2. It is a general rule that the cause of action must have existed at the
   time the suit began.
3. The amount of the undertaking to be given upon the granting of an
   injunction or restraining order must be fixed by the Judge, and
   while it may be executed and the sureties allowed to justify before
   the Clerk, the latter, in that respect, is the mere servant of the
   Judge, who may revise his action.
4. The adjudication by the Judge that the undertaking has been duly
   executed and filed, is conclusive, and no appeal lies therefrom.

This was a MOTION for an injunction, made in an action
pending in BURKE Superior Court, heard before *Montgomery,*
*J.,* at Chambers, on the 22d November, 1887.

An election was ordered to be held, and was held, in the
county of Burke, under the direction of the defendants—
County Commissioners—on the 15th day of May, 1886, to
take the sense of the electors of the county, upon a proposi-
tion submitted to them at that election to subscribe to the
capital stock of the "Southern and Western Air Line Rail-
road Company," as allowed by the statute (Acts 1885, chap.
274, § 10,) incorporating that company. This statute pro-
vides that such subscription might be made, " if a majority
of the qualified voters of such county shall vote for such
subscription," &c.

This action was begun on the 4th day of June, 1886. It is alleged in the complaint that there were in the county, on the day of the election mentioned, 2,401 qualified voters; that 970 votes were thereat cast in favor of "Subscription;" that 439 votes were cast for "No Subscription;" that nevertheless the defendants, as County Commissioners, thereafter, *on the 6th day of July,* 1886, falsely pretended to ascertain and declare that a majority of such qualified voters cast their votes at the said election for "Subscription," when, in fact and truth, greatly less than a majority so voted. It is further alleged that the defendants have directed that a subscription for the capital stock of the said company be made for the county named, and that county bonds be issued, &c.

The defendants answer the complaint, and among other things allege:

"That it appears upon the face of the complaint that if any cause of action exists against these defendants, which is denied, then the same arose after the summons was issued, on the 4th day of June, 1886, and that one of the material averments of the complaint is the action of the defendants on the 6th day of July, 1886, subsequent to the institution of this action, and defendants are advised and believe that the cause of action must have existed when the summons issued, otherwise this action must be dismissed and the restraining order herein vacated."

The purpose of the action is to contest the result of the election—to have the true result ascertained and declared, to the effect that a majority of such qualified voters did not vote for such subscription.

Relief by injunction and general relief are demanded. At Chambers a Judge granted an injunction, pending the action, until the hearing upon the merits, from which the defendants appealed.

*Mr. John Gray Bynum* (*Mr. J. T. Perkins* filed a brief), for the plaintiffs.

*Messrs. I. T. Avery* and *S. J. Ervin*, for the defendants.

MERRIMON, J., (after stating the case.) It was the province and duty of the defendants—County Commissioners—to ascertain and declare truly, as prescribed by law, the result of the election in question, and their action in that respect was final and conclusive as to such result, for all proper purposes, until it should be impeached successfully in an action brought for that purpose. Their ascertainment of the result cannot be questioned in any collateral action or proceeding. This is settled by many decisions. (*The Code*, §§ 1996–1998, Acts 1885, ch. 274, § 10); *Smallwood* v. *New Berne*, 90 N. C., 36; *Duke* v. *Brown*, 96 N. C., 127; *McDowell* v. *The Construction Company*, Id., 514; *Wood* v. *Oxford*, 97 N. C., 227; *Rigsbee* v. *Durham*, 98 N. C., 81; *State* v. *Emery*, Id., 768; *Rigsbee* v. *Durham*, 99 N. C., 341; *State* v. *Cooper*, decided at the present term.

The law contemplates and intends that such elections shall have distinctive character, integrity and certain effect for the purposes intended by them, just as in case of other elections, and the results of them, when ascertained and declared by the proper officers, shall not be questioned collaterally in any action or proceeding in which what they are intended to settle shall become material. If this could be done the result of the election would never be settled, but it would be continually open to be questioned, and it would depend upon the fortunes of each action in which it might become material. The law does not tolerate such practical absurdity.

The officers respectively charged by the law with ordering such elections, holding and ascertaining and declaring the results of them, as to their duties have authority, in the exercise of which they shall not be interfered with or restrained,

while they proceed in the course of their action according to the forms and requirements of the law applicable. They must be allowed to discharge their duties respectively in the exercise of the authority conferred upon and confided to them, although they may so do erroneously. The legal correctness of their action is not to be questioned or contested at every step they may take, but only by proper action, when the election shall have been completed—otherwise, an election might in many cases be thwarted and defeated by the factious and unwarranted interference of persons unfriendly to it. Moreover, it would be impracticable to restrain officers in the exercise of authority that involved their judgment and discretion, which cannot be certainly known until the same shall be expressed and made operative.

It would be otherwise, however, when persons—officers—claiming the right to exercise authority really had none, colorable or otherwise. The authority exercised must be allowed by law. And, no doubt, there may be cases in which a threatened or contemplated unlawful exercise of authority might be restrained, but such cases are exceptional.

In the present case, the County Commissioners had authority, and it was their duty, to ascertain and declare the result of the election, and the plaintiffs had no right to have them restrained in that respect by injunction. They alone could first determine the result, and if they should do so falsely or erroneously, as alleged, then the plaintiffs, or other persons interested, could bring their action to contest the result complained of, and have relief by injunction accordingly as the circumstances might require. No cause of action as to the result arose until it was ascertained and determined by the defendants; they were charged with power for such purpose and they could not be prevented from executing it in the orderly course prescribed by the statute.

Obviously the pupose of this action is—though it is not formally and precisely alleged—to contest the result of the

election mentioned. At the time it was brought the election had been held, and the apparent and unofficial result was known to the plaintiffs, as claimed by them, but at that time, and for more than a month afterwards, the result was not ascertained and declared by the defendants—County Commissioners. The cause of action did not exist at the time the action was begun, and the defendants do not waive their right of objection in this respect, but expressly insist upon it in their answer and the same as amended.

Generally, the cause of action must exist at the time the action is brought, and there is nothing in this case that puts it without this general rule. It is of the nature of an action, and its very purpose is, to enforce an existing right, or cause of action, denied in some way, or to settle a right that requires to be settled, by a judicial determination, in order to give it complete operative effect. It would be alike unreasonable and unjust to allow a plaintiff to bring his action and maintain it against the defendants before he had any cause of action in some way arising In the nature of the pleadings they relate to the time the action began, and ordinarily the plaintiff and the defendant must respectively allege the cause of action, and the counterclaim, as they existed at that time. *Clendennin* v. *Turner*, 96 N. C., 416 ; *Kramer* v. *The Electric Light Company*, 95 N. C , 277.

The judgment must be reversed and the action dismissed.

Error.

---

In the course of the action a Judge, at Chambers, allowed a motion for an injunction pending the action, until the hearing upon the merits :- "*Provided,* that the plaintiffs execute an undertaking, payable to the defendants, in the sum of five thousand dollars, justified and conditioned pursuant

to the statutes, said undertaking to be filed with the Clerk of the Superior Court," &c. The undertaking was given and filed as required by the order of the Court.

Afterwards, the defendants made application to the Clerk to be allowed to examine the sureties to the undertaking, and they assigned divers grounds of objection to it. The Clerk allowed the application, and the plaintiffs made objections thereto. Thereupon the Clerk heard the matter, and made sundry rulings, from some of which the plaintiffs appealed to the Judge, and others from which the defendants likewise appealed.

The Judge considered the appeals, and decided that the undertaking was " in substance, a compliance with an order made by me (the Judge) in this cause on November 22d, 1887, and I hereby direct the same to be filed by the Clerk," &c. From this order the defendants appealed to this Court, assigning as grounds of exception that the Judge had not overruled certain rulings of the Clerk, and that he had made the order appealed from.

The statute (*The Code,* § 341,) prescribes that, "upon granting a restraining order for an injunction the Judge shall require, as a condition precedent to the issuing thereof, that the Clerk shall take from the plaintiff a written undertaking, with sufficient sureties, to be justified before and approved by the said Clerk, or by the Judge," &c. It is confided to the Judge to fix the amount of the undertaking, and it may be justified before and approved by the Clerk or the Judge, and the latter has authority to supervise the action of the Clerk, whose action stands as that of the Court, unless objection shall be made by a party to the action who is interested. The Clerk is the mere servant or agent of the Court. No appeal lies in such case from the action of the Court in term, or from that of the Judge at Chambers. The justification and approval of such undertakings is of a class

101—27

of merely incidental matters in the action, in which the decision of the Court must almost necessarily be final. It would be alike inexpedient and impracticable to allow appeals from such decisions—it would give rise to an indefinite number of appeals in the same action, create complications, confusion and endless delays, while it would not settle and determine any substantial matter litigated by the action. The Court makes many incidental rulings and orders in the course of actions, from which no appeals lie, and as to them its action is final, as certainly so as the action of this Court in respect to matters that properly come before it by appeal.

It is a mistake to suppose that the statute (*The Code,* § 548,) allows appeals to be taken " from every judicial order or determination of a Judge of a Superior Court, upon or involving a matter of law or legal inference, whether made in or out of term;" appeals are allowed only where such an order or determination " affects a substantial *right claimed in any action or proceeding ;* or which, in effect, determines the action, prevents a judgment, from which an appeal might be taken, or discontinues the action, or grants or refuses a new trial." The appeal lies from an order or determination in the action which affects the right litigated—the cause of action in controversy therein—in respects and ways specified; but it does not lie from an order or determination that is merely incidental, and not affecting directly the cause of action litigated.

Now, the order of the Court appealed from did not affect the " substantial right claimed "—the merits of the cause of action litigated by the action; it was as to a matter and in a respect purely incidental, and the statute just cited does not embrace it. No appeal lies in such a case. The proceeding as to the undertaking was summary; the Court—the Judge—had complete authority, without regard to what the

Clerk had decided, to approve or disapprove it, and to make the order which the defendants undertake and suppose they had a right to appeal from.    *Marsh* v. *Cohen,* 68 N. C., 283 ; *Sternberger* v. *Hawley,* 85 N. C., 141.

The appeal of defendants in this respect must therefore be dismissed.