HOWARD SCHULTZ AND ASSOCIATES OF THE SOUTHEAST, INC. v. JOE WILLIAM INGRAM, JR.

No. 7726SC1073

(Filed 7 November 1978)

1. **Rules of Civil Procedure § 65— preliminary injunction—absence of statement of reasons—order irregular**

    The absence of a statement of the reasons for a preliminary injunction only rendered the order irregular, not void, and the irregularity should be corrected by the trial court, not the court on appeal.

2. **Rules of Civil Procedure § 60— order clarifying preliminary injunction order—propriety**

    The trial court could properly issue a clarifying order, pursuant to G.S. 1A-1, Rule 60(a), setting forth the reasons for a preliminary injunction, since the correction did not alter the effect of the order but did clarify the record for appeal, and defendant was not prejudiced by this correction because he was well aware of the facts in the case which would support the injunction.

3. **Rules of Civil Procedure § 65— preliminary injunction—sufficiency of affidavits**

    Defendant's contention that there was no probable cause for a preliminary injunction because the affidavits were insufficient is without merit since defendant relied upon G.S. 1A-1, Rule 56(e) to support his position, but that rule established the requirements for affidavits to support a summary judgment motion and therefore was not controlling in this action.

4. **Injunctions § 13.2— covenant not to compete—irreparable loss shown**

    In an action to enforce a restrictive covenant prohibiting defendant from engaging in accounts payable auditing in competition with plaintiff, the plaintiff's affidavits and exhibits which suggested that defendant had access to and would use certain confidential information in his own accounts payable auditing were sufficient to support the trial court's finding of irreparable loss, as the dissemination of plaintiff's information would be harmful to its business.

5. **Master and Servant § 11.1— contract containing restrictive covenant—validity of assignments**

    In an action to enforce a restrictive covenant in an employment contract, defendant's contention that assignments of the contract were invalid because

the contract was one for personal services, defendant had no notice of the assignments and he did not consent to them is without merit, since the assignments did not affect defendant's duties and obligations and affidavits tended to show that defendant had actual notice that the contract had been assigned to plaintiff.

**6. Master and Servant § 11.1— restrictive covenants—requirements**

In order for a restrictive covenant to be enforceable it must be in writing, entered into at the time and as a part of the contract of employment, based on valuable considerations, reasonable both as to time and territory embraced in the restrictions, fair to the parties, and not against public policy.

**7. Master and Servant § 11.1— covenant not to compete—reasonableness of terms**

A restrictive covenant prohibiting defendant from competing with plaintiff in "any area or areas from time to time constituting the Principal's or Associate's area of activity in the conduct of their respective businesses" for a period of two years after termination of employment was reasonable and not unduly vague, since confidential information given to defendant would be viable for two years; the covenant specifically restricted only businesses which would compete with plaintiff and thus was reasonable in light of the plaintiff's sole business of accounts payable auditing; and the contract made it clear that plaintiff operated in the southeastern area of the U.S. and named the states involved, thus making the territorial restriction clear.

**8. Injunctions § 16— amount of bond discretionary**

The setting of bond for damages resulting from a preliminary injunction is within the trial court's discretion and no appeal lies from this determination.

APPEAL by defendant from *Martin (Harry C.), Judge*. Order entered 21 November 1977 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 27 September 1978.

Defendant appeals from a preliminary injunction enjoining him from engaging in accounts payable auditing in competition with the plaintiff within the states of North Carolina, South Carolina, Georgia, Florida, Alabama and Tennessee, except for Memphis, for a period of two years from 17 October 1977. Defendant was not enjoined from engaging in general accounting activities. The preliminary injunction was based on the following facts supplied by the pleadings, affidavits and exhibits.

On 30 April 1974, defendant signed a "Sub-Associate Agreement" with Edward C. Aubitz after which defendant went to work in the Charlotte area as an accounts payable auditor. In this agreement, defendant was the "Sub-Associate" and Aubitz was the "Associate." Howard Schultz & Associates, Inc. was named as

"Principal." The Associate was authorized to conduct accounts payable auditing services within North Carolina, South Carolina, Georgia, Florida, Tennessee, Alabama and Mississippi. The agreement contained the following provision:

"5. *Restrictive Covenant*: It is understood by the parties hereto that the Associate operates pursuant to a contract with the Principal. It is further understood that the Principal has developed techniques of auditing and is engaged in the business of conducting accounts payable invoice audits throughout the United States, and that the Principal has made available to the Associate, who in turn has made available to the Sub-Associate, the benefit of these techniques, the related goodwill, and the opportunity to engage in this service. By reason thereof, it is agreed that if this agreement shall not be terminated by the Associate during the initial term as set out herein, the Sub-Associate will not, for a period of two (2) years after the termination of this agreement, for any reason thereafter, engage, directly or indirectly, as principal, agent, employer, employee, or in any capacity whatsoever, in any business, activity, auditing practice, or any other related activities, in competition with the Principal's or Associate's business within any area or areas from time to time constituting the Principal's or Associate's area of activity in the conduct of their respective businesses, as of the date of said termination, unless the Principal and the Associate shall give written consent to the Sub-Associate for such activity. In addition to any other rights or remedies available to the Principal and the Associate for breach of the agreement contained in this paragraph, the Principal and the Associate shall also be entitled to enforcement by any remedy of injunction or ancillary relief, as well as for damages which may be caused them by said breach, and for reasonable attorneys' fees incurred in enforcement of this covenant."

An addendum to the agreement, signed by the defendant, stated that "[t]his covenant is not to be interpreted to hinder you from making a living in the general accounting field such as entering into a controllership, engaging in bookkeeping and financial report generating activities, or limit in any way your participation in regular financial auditing practice."

Defendant worked in the Charlotte area from 30 April 1974 to 17 October 1977 at which time he resigned from his position. During this period of time, the "Sub-Associate Agreement" was assigned by Aubitz to Ted E. Wisner who assigned it to Earl D. Barker who assigned it to the plaintiff, Howard Schultz & Associates of the Southeast, Inc., on 2 October 1975. Mr. Barker was the president of the plaintiff at the time of this assignment and continues to hold that office. Defendant alleges that he had no knowledge of these assignments and did not assent to them.

Subsequent to his notice of termination, the defendant told Mr. Barker that he was considering going into the accounts payable auditing business in the Charlotte area after his resignation. The affidavit of Mr. Barker tended to show that the defendant scheduled accounts payable audits with several of the plaintiff's clients for whom the defendant had previously done auditing work while employed by the plaintiff.

In response to the defendant's activities, the plaintiff filed a complaint alleging that the defendant was breaching the restrictive covenant agreement by competing with the plaintiff and that the plaintiff would suffer irreparable harm in that the defendant would use and reveal various trade secrets and other confidential information of the plaintiff. Plaintiff requested a preliminary injunction pending trial on the merits. On 21 November 1977, the trial court entered a preliminary injunction enjoining defendant from competing with the plaintiff. On 14 December 1977, the court issued a clarifying order, pursuant to North Carolina Rules of Civil Procedure Rule 60(a), setting forth the reasons for the injunction. Defendant appeals from the entry of this preliminary injunction.

*Grier, Parker, Poe, Thompson, Bernstein, Gage and Preston, by Sydnor Thompson, Heloise Merrill and Francis O. Clarkson, for plaintiff appellee.*

*Tucker, Moon and Hodge, by Robert B. Tucker, Jr., and John E. Hodge, Jr., for defendant appellant.*

HEDRICK, Judge.

[1] Defendant assigns as error the clarifying order which sets forth the reasons for the preliminary injunction. Rule 65(d) of the

North Carolina Rules of Civil Procedure requires that a preliminary injunction order "shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts enjoined." The clarifying order tracks the original order with the exception of the following language:

> "for the reason that the court is of the opinion that there is probable cause that plaintiff will be able to establish at the trial of this action that the covenant not to compete contained in the contract between the parties dated April 30, 1974 is enforceable against the defendant, that the defendant threatens to violate that covenant, and that there is reasonable apprehension of irreparable loss to the plaintiff unless injunctive relief is now granted."

Defendant contends that the original order is void because it does not comply with the requirements of Rule 65(d) and that the alterations to the original order, embraced in the clarifying order, are not within the ambit of Rule 60(a); thus the trial court lacked jurisdiction to clarify its order because notice of appeal had been filed.

In *Uptegraff Manufacturing Co. v. International Union*, 20 N.C. App. 544, 202 S.E. 2d 309, *cert. den.*, 285 N.C. 234, 204 S.E. 2d 24 (1974), this Court stated that a Rule 65(d) order which omits the reasons for its issuance is only irregular, not void; thus the order binds the parties until it is corrected. To set aside an irregular judgment, a motion must be made before the court rendering such judgment and not on appeal. *Collins v. Highway Commission*, 237 N.C. 277, 74 S.E. 2d 709 (1953). This rule is designed to allow courts to correct irregularities and to present the appellate court with all relevant facts on appeal. In the present case, the absence of a statement of the reasons for the injunction only renders the order irregular, not void, and should be corrected by the trial court and not on appeal.

[2] The question next presented is whether this correction can properly be made under a Rule 60(a) motion. Rule 60(a) provides that "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the judge at any time on his own initiative or on the motion of any party. . . ." Generally, no substantive changes

may be corrected by a 60(a) motion. 11 Wright & Miller, Federal Practice and Procedure: Civil § 2854 (1973). The Third Circuit has held that Rule 60(a) "permits the correction of irregularities which becloud but do not impugn" the judgment. *United States v. Stuart*, 392 F. 2d 60, 62 (3d Cir. 1968). In the present case, the correction did not alter the effect of the order but did clarify the record for appeal. The defendant was not prejudiced by this correction because he was well aware of the facts in the case which would support the injunction. We, therefore, hold that the Rule 60(a) motion was proper to reform the order to comply with Rule 65(d).

[3] Defendant next assigns as error the entry of the preliminary injunction. In order to be entitled to a preliminary injunction the moving party must show "(1) there is probable cause that plaintiff will be able to establish the right he asserts, and (2) there is reasonable apprehension of irreparable loss unless interlocutory injunctive relief is granted or unless interlocutory injunctive relief appears reasonably necessary to protect plaintiffs' rights during the litigation." *Setzer v. Annas*, 286 N.C. 534, 537, 212 S.E. 2d 154, 156 (1975). On appeal, the enjoined party bears the burden of showing that the trial court erred as there is a presumption that the judgment is correct. *Puett v. Gaston County*, 19 N.C. App. 231, 198 S.E. 2d 440 (1973). Neither the findings nor the conclusions of the trial court and the appellate court are binding upon the court at trial on the merits. *Board of Provincial Elders v. Jones*, 273 N.C. 174, 159 S.E. 2d 545 (1968).

Defendant contends that there was no probable cause for the injunction because the affidavits were insufficient. He cites Rule 56(e) of the North Carolina Rules of Civil Procedure to support this proposition but that rule is not controlling. Rule 56(e) establishes the requirements for affidavits to support a summary judgment motion which is a final order. Rule 65 does not establish such requirements. Furthermore, an injunction under Rule 65 is a temporary order pending trial; thus the affidavits need not meet as high a standard as those for a summary judgment ruling. 7 Moore's Federal Practice ¶ 65.04(3) (1975). In this case, the affidavits, exhibits and pleadings were more than sufficient to support the preliminary injunction.

[4] The defendant next contends that the plaintiff has shown no irreparable loss by virtue of his activities. He asserts that if he has violated the restrictive covenant, monetary damages are sufficient to compensate the plaintiff for its loss. Nevertheless, in *Forrest Paschal Machinery Co. v. Milholen*, 27 N.C. App. 678, 220 S.E. 2d 190 (1975), this Court held, on similar facts, that the defendant could be enjoined from competing with a former employer pending trial. The Court noted that the defendant utilized confidential information of the employer in the competing business. In the present case, Mr. Barker's affidavits and exhibits suggest that the defendant had access to and would use certain confidential information in his own accounts payable auditing. Those allegations were sufficient to support the trial court's finding of irreparable loss as the dissemination of the plaintiff's information would be harmful to its business.

[5] Defendant claims that the assignments of the "Sub-Associate Agreement" were invalid as it was a contract for personal services, he had no notice of the assignments and he did not consent to them. Normally, executory contracts for personal services are not assignable. *Atlantic and North Carolina Railroad Co. v. Atlantic and North Carolina Co.*, 147 N.C. 368, 61 S.E. 185 (1908). Nevertheless, personal service contracts may be assigned when the character of the performance and the obligation is not altered. *Munchak Corp. v. Cunningham*, 457 F. 2d 721 (4th Cir. 1972). In *Munchak*, the Fourth Circuit ruled that a basketball player's contract could be assigned and the restrictive covenant enforced. The Court saw no way in which the assignment of the basketball franchise and the player's contract to successive corporate owners would affect the duties and obligations of the player. In the present case, the affidavits tend to show that the assignments of the "Sub-Associate Agreement" did not affect the defendant's duties and obligations. Furthermore, Mr. Barker, in his affidavit, states that the defendant performed audits scheduled by the plaintiff, cashed checks drawn on the plaintiff and was visited by Mr. Barker in the course of his work. In addition, the defendant had been working for the plaintiff for over two years prior to his resignation. These factors support the trial court's conclusion that there was probable cause that the plaintiff would succeed on the issue of assignment at trial.

[6, 7]   We now turn to the question of the validity of the restrictive covenant itself. In order for a restrictive covenant to be enforceable it must be "(1) in writing, (2) entered into at the time and as a part of the contract of employment, (3) based on valuable considerations, (4) reasonable both as to time and territory embraced in the restrictions, (5) fair to the parties, and (6) not against public policy." *Asheville Associates, Inc. v. Miller*, 255 N.C. 400, 402, 121 S.E. 2d 593, 594 (1961). Defendant contends that the restrictive covenant is unenforceable because it is unreasonable in time, territory, and activity restricted, it is unfair, and it is against public policy. We hold otherwise. The time limit of two years is reasonable, in view of the nature of the plaintiff's business, because confidential information given to the defendant is viable for that period of time. The covenant, and the addendum, specifically restrict only businesses which compete with the plaintiff and thus the covenant is reasonable in light of the plaintiff's sole business of accounts payable auditing.

The territorial restraint is also reasonable and not unduly vague. The restrictive covenant does not give any geographic limit other than "any area or areas from time to time constituting the Principal's or Associate's area of activity in the conduct of their respective businesses, as of the date of said termination." Nevertheless, the contract, in an earlier section, establishes that the Associate operated in the southeastern area of the United States in the states of North Carolina, South Carolina, Georgia, Florida, Tennessee, Alabama and Mississippi. At the time of the defendant's termination these states, except Mississippi, also comprised the plaintiff's area of operation. We believe this contract is sufficient to support a preliminary injunction enforcing a restrictive covenant for this area. The facts presented fully support the plaintiff's contention that it operated in these states and that the defendant's attempts to compete were affecting the plaintiff's business in areas other than North Carolina. Defendant contends that the territorial restriction is vague in that it includes both the Principal's and the Associate's areas of business. Although the areas are not enumerated separately, we believe that the restrictive covenant can be enforced as to the Associate's area of business without altering or amending the contract. In *Welcome Wagon, Inc. v. Pender*, 255 N.C. 244, 120 S.E. 2d 739 (1961), it was stated that a court cannot reform the contract by reducing the

territory restricted. Nevertheless, if the parties have made divisions of the territory, a court can enforce the reasonable restrictions and refuse to enforce those which are not reasonable. In the present case, the geographic area of operation of the Associate and that of the Principal are set out specifically in other parts of the contract and are sufficiently distinct. Since the plaintiff seeks only to enforce the covenant as to the Associate's area of operation, the court may enforce that section without considering the validity of the Principal's territorial restriction. We further hold that this contract is fair and not against public policy.

[8] Defendant's last assignment of error contends that the $10,000 bond posted by the plaintiff is insufficient to cover his damages in the event the defendant succeeds at trial on the merits. The setting of bond is within the trial court's discretion and no appeal lies from this determination. *Bynum v. Board of Commissioners*, 101 N.C. 412, 8 S.E. 136 (1888).

We find that the trial court did not abuse its discretion in ordering a preliminary injunction. The evidence as presented in the pleadings, affidavits and exhibits was sufficient to support a finding of probable success at trial and irreparable loss if the preliminary injunction were not granted.

Affirmed.

Judges ARNOLD and WEBB concur.