WHITTAKER GENERAL MEDICAL CORPORATION v. CONNIE DANIEL AND DR. T. C. SMITH COMPANY

No. 8710SC230

(Filed 1 December 1987)

1. **Rules of Civil Procedure § 50.1— denial of summary judgment—subsequent directed verdict or judgment n.o.v. not barred**

   A denial of a motion for summary judgment, based only upon a forecast of evidence, should not operate to bar the granting of a directed verdict or a judgment notwithstanding the verdict based on the evidence actually presented at trial.

2. **Master and Servant § 11.1— covenant not to compete—promotion plus change in compensation as valuable consideration**

   A promotion plus a change in compensation from salary to commission constituted valuable consideration which supported a non-competition agreement between plaintiff employer and defendant employee.

3. **Master and Servant § 11— agreement not to call upon former employer's customers—agreement overly restrictive**

   Because there were no trade secrets or confidential information used by defendant employee and because the development of defendant's sales and marketing skills were the result of her own initiative and efforts, plaintiff failed to prove a business interest worthy of the protection provided by its

non-competition agreement which stated that a former employee would not call upon or divert in any way customers served by employer plaintiff, and the agreement was overly restrictive and therefore invalid for overbreadth.

APPEAL by plaintiff from *Herring, D. B., Judge.* Judgment entered 19 September 1986 and signed 6 October 1986 in WAKE County Superior Court. Heard in the Court of Appeals 29 September 1987.

This appeal arises from an action for breach of and interference with contract brought by plaintiff Whittaker General Medical Corporation (Whittaker General) against defendant Connie Daniel (Ms. Daniel), a salesperson formerly employed by plaintiff, and Carolina Surgical Supply Company (Carolina Surgical Co.), a division of Dr. T. C. Smith Company (Smith Co.). Plaintiff sought both injunctive relief and monetary damages. Defendants counterclaimed for damages for lost business and costs of litigation, which counterclaim has since been withdrawn. Defendants later filed a Motion for Summary Judgment on 29 July 1986 and on 13 August 1986 plaintiffs moved for partial summary judgment relating to the defendants' liability. By order dated 20 August 1986, Judge David E. Reid denied both motions without stating specific reasons.

Following a jury trial, a verdict was returned in favor of plaintiff, awarding damages of $93,551.00 for breach of the Non-Competition Agreement against defendant Ms. Daniel and $93,551.00 against defendant Smith Co. for interference with contract. In addition, the jury awarded $12,898.00 in punitive damages against defendant Smith Co. on the interference with contract claim. Defendants, in open court, moved for judgment notwithstanding the verdict or in the alternative for a new trial. The trial court granted the Motion for Judgment Notwithstanding the Verdict. Plaintiff appeals the grant of judgment notwithstanding the verdict.

The evidence at trial tended to show that defendant Ms. Daniel was originally hired as a part-time clerical worker by General Medical Corporation, a predecessor in interest to plaintiff, in 1971. At that time, Ms. Daniel was paid minimum wage and worked on an hourly basis. According to trial testimony, as Ms. Daniel became more familiar with the company's business, she was given additional responsibilities which she handled excep-

tionally well. In March 1976, she was promoted from part-time secretary/part-time salesperson to full-time salesperson. In addition, her compensation was changed from that of the hourly wage to a straight salary of $6,448 per year to $7,272 per year plus a car allowance of $1,865 per year. At the time of her promotion, Ms. Daniel was asked to sign a Non-Competition Agreement which provides, in part:

> 2. Employee agrees that the customers of Employer belong to and are a part of the assets and good will of Employer; that Employee serves and sells, and will continue to serve and sell, such customers in a representative capacity only; and that on the termination, for any cause whatsoever, of his employment with Employer, he will not, for a period of two (2) years thereafter, (a) engage, directly or indirectly, in any business of manufacturing, selling, renting or distributing any goods manufactured, sold, rented or distributed by Employer during the term of his employment, either for himself or for any individual, firm or corporation in the business of manufacturing, selling, renting or distributing any of said items, in any territory (i) assigned to him by Employer at the time of termination of his employment, or (ii) in any territory so assigned within two (2) years prior to such termination, nor (b) call upon, solicit or interfere with or divert in any way any customers served by Employer in such territories. Employee further agrees that he will not, during the term of his employment hereunder, or any time thereafter, furnish to any individual, firm or corporation other than Employer, any list or lists of customers of Employer or any confidential information or trade or business secrets of any kind or nature pertaining to the business or affairs of Employer.

Ms. Daniel continued to expand her territory in the Wake County area, increasing her physicians' accounts from three in March 1976 to 25 or 30 by February 1982. [During the interim between March 1976 and February 1982, General Medical Corporation had been sold to plaintiff Whittaker General. As stipulated in post-trial motions, all contracts and liabilities including the Non-Competition Agreement were properly assigned to plaintiff.]

On 26 February 1982, pursuant to its company policy, Whittaker General required all its sales personnel to be removed from

straight salary and paid solely on a commission basis. No longer were any of the sales personnel, including defendant, to receive car allowances or paid vacations. A new Non-Competition Agreement was not executed during or after the change in compensation. Ms. Daniel's duties remained the same although her territory expanded to include additional counties and her workload likewise increased as did her income.

In early 1985, defendant Smith Co. began discussing the possibility of hiring Ms. Daniel to work sales for Smith Co. During these negotiations, Ms. Daniel informed Smith Co. agents of the Non-Competition Agreement she had signed with plaintiff. Defendant Smith Co. agreed to pay any legal fees Ms. Daniel might incur resulting from litigation over the Non-Competition Agreement.

On 28 June 1985, Ms. Daniel resigned from plaintiff Whittaker General and began to work for defendant Smith Co. on 1 July 1985. On the day of her resignation, Ms. Daniel, by letter, communicated her change of employment to her customers. She advised them that she would call on them the following week on behalf of Carolina Surgical Co. Testimony by Ms. Daniel's supervisor at Whittaker General indicated that Ms. Daniel had been very successful at converting her previous customers from Whittaker General to Carolina Surgical Co. Ms. Daniel continued to work as a sales representative for Smith Co. until trial.

*Hunton & Williams, by Julius A. Rousseau, III, for plaintiff-appellant.*

*Morris, Golding, Phillips & Cloninger, by William C. Morris, Jr., for defendant-appellees.*

WELLS, Judge.

The primary thrust of plaintiff's appeal attacks the trial court's grant of judgment notwithstanding the verdict on all questions resolved in favor of plaintiff by the jury. Citing the inadequacy of the grounds asserted by defendants' Motion for Directed Verdict which was subsequently relied upon to provide support for the judgment notwithstanding the verdict, plaintiff contends that the judgment notwithstanding the verdict cannot stand. We disagree.

The standard for review of a grant of judgment notwithstanding the verdict is well established: Where evidence, viewed in the light most favorable to non-movant, is not sufficient as a matter of law to support the verdict in favor of non-movant, judgment notwithstanding the verdict is properly granted. *Summmey v. Cauthen*, 283 N.C. 640, 197 S.E. 2d 549 (1973); *Harvey v. Norfolk Southern Railway*, 60 N.C. App. 554, 299 S.E. 2d 664 (1983). Additionally, plaintiff correctly points out that judgment notwithstanding the verdict may only be properly granted where movant earlier requested a directed verdict and asserted grounds at that time sufficient to support both a directed verdict and judgment notwithstanding the verdict. *Dickinson v. Pake*, 284 N.C. 576, 201 S.E. 2d 897 (1973); *Hornby v. Penn. Nat'l Mut. Casualty Ins. Co.*, 77 N.C. App. 475, 335 S.E. 2d 335 (1985). In the present case, defendant moved orally for directed verdict asserting as bases for the motion that the covenant not to compete or Non-Competition Agreement: (1) failed for lack of consideration; (2) was overbroad; and (3) was superseded by a later employment contract constituting a novation of the contract. While we agree with plaintiff that the grounds relating to failure of consideration and novation of contract would not support the judgment notwithstanding the verdict, the lack of a legitimate business interest and the overbreadth of the covenant's terms cause us to affirm the grant of judgment notwithstanding the verdict.

[1] Plaintiff begins its argument regarding the enforceability of the Non-Competition Agreement by positing that the initial denial of summary judgment by Judge Reid barred any subsequent ruling or determination by a superior court judge relating to the agreement's enforceability. Plaintiff cites *Calloway v. Ford Motor Co.*, 281 N.C. 496, 189 S.E. 2d 484 (1972) in support of its contention that denial of summary judgment by one superior court judge constitutes an implicit ruling on the law and facts represented by pleadings, supporting affidavits and documents and as such cannot be overruled subsequently by another superior court judge through judgment notwithstanding the verdict. We disagree. In *Calloway, supra*, our Supreme Court ruled that there is no appeal from one superior court judge to another. We note also that this Court has consistently held that one superior court may not overrule another. *See Jenkins v. Wheeler*, 81 N.C. App. 512, 344 S.E. 2d 371 (1986); *Barbour v. Little*, 37 N.C. App. 686, 247

S.E. 2d 252, *disc. rev. denied*, 295 N.C. 733, 248 S.E. 2d 862 (1978). In *Harris v. Walden*, 314 N.C. 284, 333 S.E. 2d 254 (1985), our Supreme Court ruled that appellate review of a denial of a Motion for Summary Judgment would not be appropriate where there had been a trial on the merits. We find the *Harris* analogy to be more appropriate to the question presented here, and hold that a denial of a Motion for Summary Judgment, based upon only a forecast of evidence, should not operate to bar the granting of a directed verdict or a judgment notwithstanding the verdict based on the evidence actually presented at trial. For decisions of federal courts in agreement with our holding, *see Catts Co. v. Gulf Ins. Co.*, 723 F. 2d 1494 (10th Cir. 1983); *Gross v. Southern Railway Co.*, 446 F. 2d 1057 (5th Cir. 1971); *Robbins v. Milner Enterprising*, 278 F. 2d 492 (5th Cir. 1960). We therefore hold that Judge Herring was not barred by the earlier denial of summary judgment as establishing the law of the case.

Further, plaintiff argues that the Non-Competition Agreement was valid in that it was supported by valuable consideration. To be enforceable, a Non-Competition Agreement, as part of an ongoing employment contract, must be: (1) in writing, (2) made part of an employment contract, (3) based on valuable consideration, (4) reasonable as to time and territory and (5) not against public policy. *AEP v. McClure*, 308 N.C. 393, 302 S.E. 2d 754 (1983); *Wilmar, Inc. v. Liles and Wilmar, Inc. v. Polk*, 13 N.C. App. 71, 185 S.E. 2d 278 (1971). Defendant's assertion of only two of the foregoing elements as grounds for directed verdict necessarily confines our review to an analysis of the questions of the sufficiency of the given consideration and the overbreadth of the agreement; these two issues being dispositive, we need not reach the issue of novation.

[2] Where a Non-Competition Agreement is entered into after the establishment of the underlying employment relationship, as in the present case, such agreement must be in the nature of a new contract and supported by valuable consideration. *Greene Co. v. Kelley*, 261 N.C. 166, 134 S.E. 2d 166 (1964); *Associates, Inc. v. Taylor*, 29 N.C. App. 679, 225 S.E. 2d 602 (1976). The evidence in the case at bar tended to show that at the time defendant Ms. Daniel signed the Non-Competition Agreement, plaintiff had just promoted her to a full-time sales position and had increased her

yearly salary from $6,448 to $7,272 with an additional car allowance of $155 per month. This Court has held that a promise, grant of a promotion, or change in compensation from salary to commission constitutes valuable consideration which would support a Non-Competition Agreement. *Associates, Inc., supra; see also Machinery Co. v. Milholen*, 27 N.C. App. 678, 220 S.E. 2d 190 (1975). We hold that Ms. Daniel's promotion and corresponding salary increase provided a valuable consideration sufficient to support the Non-Competition Agreement.

[3] Plaintiff next contends that the Non-Competition Agreement is not overly broad; pointing out that because plaintiff sought to enforce only paragraph 2(b) of the agreement, the remainder of the agreement relating to other restrictions could not be before the Court and therefore could not provide a proper basis for judgment notwithstanding the verdict. Plaintiff argues in the alternative that only paragraph 2(b) should be considered in the overbreadth analysis since any other potentially overly-restrictive clauses should be severed from the agreement. *See Schultz and Assoc. v. Ingram*, 38 N.C. App. 422, 248 S.E. 2d 345 (1978). Accordingly, plaintiff contends the Court should not render the entirety of the contract a nullity on the basis of a few overly restrictive, hence invalid clauses. We believe otherwise. Even if we agree with plaintiff's argument that the only clause subject to the overbreadth analysis should be that at paragraph 2(b) regarding the two-year sales restriction, we would still find it invalid for being overly restrictive.

The overbreadth analysis necessarily embraces not only territorial, time, and business restrictions but as well their reasonableness in relation to the protection of the employer's legitimate business interest. *Robins & Weill, Inc. v. Mason*, 70 N.C. App. 537, 320 S.E. 2d 693 (1984); *Manpower, Inc. v. Hedgecock*, 42 N.C. App. 515, 257 S.E. 2d 109 (1979); *Enterprises, Inc. v. Heim*, 6 N.C. App. 548, 170 S.E. 2d 540, *modified*, 276 N.C. 475, 173 S.E. 2d 291 (1969). A restriction as to territory is reasonable only to the extent it protects the legitimate interests of the employer in maintaining his customers. *Manpower, Inc., supra*. This Court, having recently decided a case very nearly on point, set forth the definition of legitimate business interest: "[A] business interest, not fictitious, which, when weighed against the public's interest in a free economic arena, is worthy of protection in order to encourage

and stimulate business efforts and innovations." *United Laborato-ries, Inc. v. Kuykendall and Stone Corp.* (No. 8628SC1204, filed 20 October 1987). In *United Laboratories*, this Court held as invalid a Non-Competition Agreement because plaintiff employer lacked a legitimate business interest where plaintiff was engaged in a highly competitive sales industry and defendant salesperson could have located information regarding plaintiff's customers in a public listing. That is, the names and business habits of plaintiff's customers could not be considered confidential or a trade secret. This is true, especially where, as the court points out, defendant salesperson's knowledge about plaintiff's customers had been ac-quired by defendant through his own efforts. Similarly, Ms. Daniel, in the present case, utilized her own personal sales skills to create her customer accounts. Ms. Daniel was not handed a ready-made clientele list (*compare, Schultz and Assoc., supra*) nor did she learn the names of the physicians solely from plaintiff. Rather, Ms. Daniel recruited the clientele using her own sales abilities and skills. This was essentially knowledge and informa-tion acquired through Ms. Daniel's own efforts on plaintiff's behalf but not through plaintiff's efforts. Also, as defendants apt-ly point out, any person may gain knowledge of hospitals and physicians through a telephone directory.

While it is true that an employer in the business of sales has a strong interest in maintaining and retaining its sales personnel, *see Welcome Wagon, Inc. v. Pender*, 255 N.C. 244, 120 S.E. 2d 739 (1961), the public and the individual salespeople also have com-peting business interests which may outweigh those of the em-ployer. *Kadis v. Britt*, 224 N.C. 154, 29 S.E. 2d 543 (1944); *Beam v. Rutledge*, 217 N.C. 670, 9 S.E. 2d 476 (1940); *United Laboratories, supra.* Where an employee possesses extraordinary sales abilities, cultivated on his own with little or no guidance from the employer, and finds that he could better use those skills under another employer, public policy should prevent his first employer from restraining his personal career success. This is true especial-ly where the employee has not taken or utilized the employer's confidential knowledge or information. Because we can find no confidential information or trade secrets used by Ms. Daniel and because the development of Ms. Daniel's sales and marketing skills were the results of her own initiation and efforts, we hold that plaintiff has failed to prove a business interest worthy of the

protection provided by paragraph 2(b) of the Non-Competition Agreement. Accordingly, we hold that paragraph 2(b) is overly restrictive and therefore invalid for overbreadth.

Finally, plaintiff omits from its appeal any argument relating to its tortious interference with contract claim against Dr. T.C. Smith Co. Because we have held the Non-Competition Agreement unenforceable, plaintiff cannot utilize the agreement in any respect as the basis for its claim. *United Laboratories, supra.* Moreover, when an employment contract, as in this case, is terminable at will and defendant, in competition with plaintiff, recruits one of plaintiff's employees, an action for tortious interference with contract will not lie. *Peoples Security Life Ins. Co. v. Hooks,* 86 N.C. App. 354, 357 S.E. 2d 411 (1987). Accordingly, the grant of judgment notwithstanding the verdict by the trial court below is in all respects

Affirmed.

Judges EAGLES and MARTIN concur.