La Mack v. Obeid, 2014 NCBC 38.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF
JUSTICE
SUPERIOR COURT DIVISION
14 CVS 12010

CHRISTOPHER LA MACK and
DANTE A. MASSARO, individually
and as members of and on behalf of
GEMINI REAL ESTATE ADVISORS,
LLC,

          Plaintiffs,

v.

WILLIAM T. OBEID,

          Defendant,

and GEMINI REAL ESTATE
ADVISORS, LLC,

          Nominal Defendant.

ORDER AND OPINION

*McGuireWoods LLP, by Robert A. Muckenfuss, Elizabeth Zwickert Timmermans, and Justin T. Yedor, for Plaintiffs Christopher La Mack and Dante A. Massaro, individually and as members of and on behalf of Gemini Real Estate Advisors, LLC.*

*Smith Moore Leatherwood LLP, by Robert R. Marcus and C. Bailey King, Jr., for Defendant William T. Obeid.*

Bledsoe, Judge

{1}    THIS MATTER is before the Court on a Motion for Temporary Restraining Order ("TRO Motion") filed by Plaintiffs Christopher La Mack ("La Mack") and Dante A. Massaro ("Massaro"), individually and as members of and on behalf of Gemini Real Estate Advisors, LLC ("Gemini"), (collectively, "Plaintiffs") in the above-captioned case.[1] Having considered the Motion, the briefs and exhibits filed in support of and in opposition to the Motion, and the arguments made at a hearing

---

[1] Plaintiffs have also filed a Motion for Preliminary Injunction. This Order addresses only Plaintiffs' TRO Motion.

held on August 28, 2014 at which all parties were represented by counsel,[2] the Court hereby DENIES Plaintiffs' TRO Motion.

I.

LEGAL STANDARD

{2}     A temporary restraining order ("TRO") may be granted if "it clearly appears from specific facts shown by affidavit or by verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition . . . ." N.C. R. Civ. P. 65(b); *see also Taylor v. Centura Bank*, 124 N.C. App. 661, 663, 478 S.E.2d 226, 227 (1996) ("All TROs must be obtained pursuant to N.C. R. Civ. P. 65."). The purpose of an injunction "is ordinarily to preserve the *status quo* . . . [and i]ts issuance is a matter of discretion to be exercised by the hearing judge after a careful balancing of the equities." *A.E.P. Indus., Inc. v. McClure*, 308 N.C. 393, 400, 302 S.E.2d 754, 759 (1983) (quoting *State v. School*, 299 N.C. 351, 357–58, 261 S.E.2d 908, 913 (1980)). Moreover, a temporary restraining order is a "drastic" procedure that "operates within an emergency context which recognizes the need for swift action . . . ." *State ex rel. Gilchrist v. Hurley*, 48 N.C. App. 433, 448, 269 S.E.2d 646, 655 (1980); *see also Register v. Griffin*, 6 N.C. App. 572, 575, 170 S.E.2d 520, 523 (1969) ("The primary purpose of a temporary restraining order is usually to meet an emergency when it appears that any delay would materially affect the rights of a plaintiff."). Like a preliminary injunction, a temporary restraining order is an extraordinary remedy. *See, e.g., Investors, Inc. v. Berry*, 293 N.C. 688, 701, 239

---

[2]  Although N.C. R. Civ. P. 65 contemplates that a TRO may be issued *ex parte* if the detailed procedural process set forth in Rule 65(b) is followed, the Court notes that the issuance of an *ex parte* TRO is granted only in rare and extraordinary circumstances and that, in the usual case, the Business Court will expect notice to be given to the adverse party or its counsel, as Plaintiffs did here. *See, e.g., Biehunik v. Felicetta*, 441 F.2d 228, 229 (2d Cir. 1971) (". . . it will be very rare indeed when the issuance of a [TRO] without notice will be justified, since normally, within a brief period of time and without much difficulty, the opposing parties and their counsel can be notified of the application by telephone and can appear before the district court."); *First Technology Safety Systems, Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993) ("The normal circumstance for which the district court would be justified in proceeding *ex parte* is where notice to the adverse party is impossible, as in the cases where the adverse party is unknown or is unable to be found.").

S.E.2d 566, 574 (1977) ("a preliminary injunction . . . is an extraordinary measure taken by a court to preserve the status quo of the parties during litigation"); *Leonard E. Warner, Inc. v. Nissan Motor Corp.*, 66 N.C. App. 73, 76, 311 S.E.2d 1, 3 (1984) (observing that a TRO has been called an "extraordinary privilege").

## II.

## ANALYSIS

{3}     Plaintiffs allege in the TRO Motion that Defendant William T. Obeid ("Obeid"), with whom they each own a one-third membership interest in Gemini, has contacted lenders and investors with which Gemini conducts business in a conscious effort to jeopardize or sabotage Gemini's business relationships with those entities.  Plaintiffs claim Obeid has engaged in this conduct because Plaintiffs purported to remove him as the Operating Manager of Gemini on July 1, 2014.  For their relief, Plaintiffs seek a TRO enjoining Obeid from the following:

> (i) interfering with or disrupting business relationships between Gemini and any of its existing or prospective customers, employees, vendors, partners, investors and creditors;
>
> (ii) making statements of any type that purport to identify Defendant Obeid as the sole owner, manager, or executive of Gemini; and
>
> (iii) making any statements of any type expressly stating or implying that Christopher La Mack and/or Dante A. Massaro are not members or managers of Gemini and/or that they lack any of the powers afforded to members or managers as set forth in Gemini's Operating Agreement.

(TRO Motion, ¶ 17).

{4}     Plaintiffs conceded at the hearing that they have no evidence that Defendant Obeid has made any statements, or threatened to make any statements, to third parties that (i) identified Obeid as the sole owner, manager or executive of Gemini or (ii) stated or implied that Plaintiffs are not members or managers of Gemini or that they lack any powers afforded to them as members or managers of Gemini under Gemini's Operating Agreement.  Accordingly, the Court concludes that Plaintiffs have not shown that they will suffer irreparable harm should a TRO

not issue prohibiting Obeid from making such statements as requested in the TRO Motion.

{5}     To support their request for a TRO enjoining Obeid from disrupting or interfering with Gemini's business relationships, Plaintiffs point to three specific instances in which they allege that Obeid has interfered with Gemini's business transactions: (i) a single alleged oral communication to UBS bank in which Obeid indicated that he was no longer Gemini's President and Operating Manager and that Gemini was in distress (the "UBS Statements"); (ii) a single alleged oral communication to Edgewood Capital in which Obeid made the same statements as well as advising that there was a dispute between Plaintiffs and Obeid (the "Edgewood Capital Statements"); and (iii) the issuance of a "litigation hold" letter from Obeid's New York counsel to Asheville Savings Bank ("ASB") advising that Obeid had filed an action against Plaintiffs in the United States District Court for the Southern District of New York for alleged wrongdoing and demanding that ASB retain certain categories of documents which Obeid claimed were relevant to that action (the "ASB Litigation Hold Letter").

{6}     For their proof of these assertions, Plaintiffs offer only the affidavit of Plaintiff Massaro. In his affidavit, Massaro implies but does not expressly state that a UBS bank employee, John Connelly, advised Massaro of the UBS Statements, and further that Mr. Connelly expressed concern to him about doing business with Gemini in an email which Plaintiffs have not made a part of the record. (Massaro Aff., ¶ 23) Massaro also implies but does not expressly state that an Edgewood Capital employee, Jon LaVirne, advised Massaro of the Edgewood Capital Statements and subsequently called Massaro to express concern about "the state of Gemini and doubt about Gemini's ability to follow through on existing deals with Edgewood." (*Id.*, ¶ 24) Plaintiffs do not offer affidavits or other evidence to support the TRO Motion from either UBS bank or Edgewood Capital and instead rely solely on Massaro's recollection of what he asserts representatives of these third parties reported to him about Obeid's oral communications to them.

{7}    Massaro also avers in his affidavit that a representative of ASB advised him that ASB received the ASB Litigation Hold Letter and that the Letter indicated that "there is a dispute between the partners, that Gemini is in distress, and that Mr. La Mack and [Massaro] do not represent Gemini." (*Id.*, ¶ 24)  A review of the Letter reveals, however, that in contrast to the representations Massaro averred that he received from the ASB representative, the Letter does not state that Gemini is in distress or that Plaintiffs do not represent Gemini.[3]

{8}    The Court concludes that taken together and in context, the proof offered by Plaintiffs to support their request for a TRO enjoining Obeid from disrupting or interfering with Gemini's business relationships is not persuasive and does not demonstrate that Plaintiffs will suffer immediate and irreparable harm should the requested relief not issue. *See Jolliff v. Winslow*, 24 N.C. App. 107, 108, 210 S.E.2d 221, 222 (1974) (providing that a temporary restraining order "is entered only upon a showing of immediate and irreparable injury, loss, or damages").[4]  The Court further finds that Obeid has raised a substantial question concerning whether this action should be dismissed for lack of standing or should be stayed in favor of the action between these same parties in federal court in New York.[5]  As a result, the

---

[3] Although Defendant Obeid asserts, and Plaintiffs deny, that the UBS and Edgewood Capital Statements and the ASB representative's comments are hearsay, the Court may consider the statements in Massaro's affidavit in any event because "affidavits [under Rule 65] need not meet as high a standard as those for a summary judgment ruling." *Schultz and Assoc. v. Ingram*, 38 N.C. App. 422, 427, 248 S.E.2d 345, 349 (1978); *see also* 2 G. Gray Wilson, North Carolina Civil Procedure § 65-2 (3d. 2007) (noting that an affidavit under Rule 65 may contain inadmissible evidence and concluding "the court should be guided by the quality of proof offered, not the form in which the evidence is received").

[4] In opposition, Defendant Obeid offers a declaration signed under the penalty of perjury that he did not advise either UBS bank or Edgewood Capital that Gemini was in financial distress or discourage either entity from doing business with Gemini or otherwise disparage Gemini.  In the same declaration, Obeid denies that the ASB Litigation Hold Letter contains the statements asserted in Massaro's affidavit. Plaintiffs contend that Obeid's declaration may not be considered by the Court because it is not a sworn affidavit. *See Burgess v. Vitola*, 2008 NCBC 7, *51 (2008) (declining to recognize an unsworn declaration as a proper affidavit).  The Court declines to determine whether it may consider Obeid's declaration because the Court does not find it necessary to consider – and therefore does not consider – Obeid's declaration in deciding the TRO Motion.

[5] Immediately prior to the hearing on August 28, 2014, Defendant Obeid filed a Motion to Dismiss or Alternatively Stay Action.  This Order does not determine the merits of Defendant's motion.

Court cannot conclude, at this stage, that Plaintiffs have shown a likelihood of success on the merits of their claims. *See* 2 Wilson, § 65-3 (explaining that a plaintiff's likelihood of success on the merits of his claims is a factor to be considered by the court in ruling on a motion for a temporary restraining order).

III.

CONCLUSION

{9}     Based on the foregoing, the Court concludes that, at this stage, the equities do not weigh in favor of granting Plaintiffs the requested relief. Wherefore, the Court, in the exercise of its discretion and without reaching the merits of Plaintiffs' Motion for Preliminary Injunction, hereby DENIES Plaintiffs' TRO Motion.

SO ORDERED, this the 29th day of August, 2014.